IN THE MATTER OF THE LIQUOR TAX AGAINST DAVID & GERMAN, and LOT 1, BLOCK 1, RIVER ADDITION TO ALDEN, IOWA. MRS. H. J. DAVID, Applicant for Cancellation of Tax, and JOHN HOSKINS, Mortgagee, Intervener, Appellant, Hardin County.

Intoxicating Liquors: ASSESSMENT OF MULCT TAX. Section 1, of Acts Twenty-fifth General Assembly, chapter 62, provides for a tax of six hundred dollars per annum for selling liquor. Section 7, that if on a trial to rebate the tax it appears that sales were not continued for more than six months in the "year" for which the tax was assessed, the total tax for the year may be reduced *pro rata*, and section 9 provides that the board shall at the September meeting levy an annual tax of six hundred dollars, payable semi-annually and that it shall at each regular meeting examine the assessment books and levy a tax against such persons as have not previously been taxed, but that there shall be "only a *pro rata* tax for the *remainder of the year*," depending on the time of the assessment. The board made an assessment December 27, in a case where sales had not continued for six months. *Held*, in view of section 45, Code 1873, providing that, where not repugnant to the context, the word "year" means the year of our Lord, the said annual tax assessed should have been rebated to six dollars and sixty cents, or enough to pay for the time between December 27, 1895, and the end of the year 1895.

JURISDICTION: *Rebating tax.* The district court has no jurisdiction to determine priorities of liens on appeal from a decision of the board of supervisors in proceedings under Acts Twenty-fifth General Assembly, chapter 62, section 3, to assess property on the ground that intoxicating liquors were sold on the premises, as the board of supervisors had no such authority.

SAME. The board of supervisors has no jurisdiction to determine priority of liens on property listed for assessment, on the ground that intoxicating liquors are sold on the premises under the provisions of Acts Twenty-fifth General Assembly, chapter 62, section 3.

EVIDENCE. Intoxicating liquors were sold upon leased premises during the summer and fall of 1895, and during all the years of 1895 and 1896 the place had the reputation of being a place where

3 intoxicating liquors were sold in violation of law. The lessor, who had leased the premises to be lawfully used as a pharmacy, had no actual notice of the sale of liquor until December, 1895, when she canceled the lease, and released the property to another for lawful purposes. She was in the store where the liquors were sold from three to six times per week, but testified that she did not see or hear of liquors being sold therein. *Held,* she "might have known of the sale of intoxicating liquors," within Acts Twenty-fifth General Assembly, chapter 62, section 6, so as to render the property liable for the tax.

*Appeal from Hardin District Court.*—HON. B. P. BIRD-SALL, Judge.

### SATURDAY, DECEMBER 18, 1897

APPEAL from an order made on application of Mrs. H. J. David, owner of certain property in the town of Alden, for rebate of liquor tax, in which proceeding John Hoskins, a mortgagee, intervened. The district court denied the application, and Mrs. David and Hoskins appeal.—*Modified and affirmed.*

*H. F. Schultz* and *Milchrist & Robinson* for appellants.

No appearance for appellee.

DEEMER, J.—The property was listed for assessment under the provisions of section 3, chapter 62, Acts Twenty-fifth General Assembly—the statements of the three citizens having been filed on the twenty-seventh day of December, 1895. On the first day of January, 1896, Mrs. David, the owner of the property filed her petition to rebate and cancel the tax, which was fixed by the board at four hundred and fifty dollars, on the ground that she leased the same to Laura B. David and Theodore German, for the period of one

year from the first day of January, 1895, for the pur-
pose of conducting a lawful business; that, if intoxicat-
ing liquors were sold or kept by them upon the prem-
ises, it was without her knowledge or consent; and that,
if she is liable for any tax it cannot exceed the sum of
one hundred and fifty dollars.   On the twenty-first of
the same month, Hoskins, a mortgagee, filed a petition
of intervention before the board of supervisors, asking
that the liquor tax, if it be confirmed, be held inferior
and junior to his mortgage.   At the hearing before the
board, the tax, to the extent of four hundred and fifty
dollars, was confirmed, and the petition of Hoskins was
denied.   Upon appeal to the district court the tax was
confirmed, but no order seems to have been made on
the petition of intervention.   Intervener's mortgage
was executed in the year 1891, and was superior to the
tax lien.   *Smith v. Skow*, 97 Iowa, 640.   But, as the
district court made no order with reference to the
matter, there seems to be nothing from which to
appeal.   The probabilities are that the court dis-
regarded this petition, because unauthorized;
and, if such be the case, we think it did so advisedly.
The proceedings were before the district court on
appeal, and it had no authority to consider anything
not properly in issue before the board of supervisors.
The proceedings before the board were special, and it
had no other authorirty than the statute confers.
Petitions of intervention are not recognized by
statute in such matters, and we do not think the
board had jurisdiction to determine piorities of liens.
Intervener must resort to some court having jurisdic-
tion for an adjudication of his claims.   The board had
no such power, and, as it did not have, the district court
had none on appeal.

Mrs. David contends that the tax should be can-
celed, for the reason that she did not have knowledge,
nor could she have known, by the use of reasonable care

and diligence, that intoxicating liquors were kept or sold upon the premises. By an agreed statement of facts, it is shown that liquors were sold upon the premises by one J. W. David during the summer and fall of the year 1895, and that during all of the years 1895 and 1896 the place had the reputation of being a place where intoxicating liquors were sold in violation of law. J. W. David is a practicing physician and surgeon, but he had no connection, so far as shown, with the firm of David & German, which leased the building. Mrs. David had no actual notice that liquors were sold at the place in question until the month of December, 1895. She thereupon canceled the lease, and re-leased the property to another firm for lawful purposes. She was in the store where the liquors were sold from three to six times per week, but testified that she did not see or hear of any liquors being sold therein. She leased the premises for a pharmacy, to be used by the lessees for lawful purposes. The material part of the statute with reference to the matter is as follows: "Should it appear, either on the trial before the board of supervisors or in the district court, that there have been sales of intoxicating liquor made in or upon the premises listed for taxation, the tax shall be confirmed against the person, corporation or partnership conducting the business; * * * and if it shall appear * * * that the owner or his agent had, or, by use of reasonable, care and diligence, might have known of the sales of intoxicating liquors, * * * the tax shall be confirmed against the property. * * *" Acts Twenty-fifth General Assembly, chapter 62, section 6. "And evidence of the general reputation of the place may be introduced." Section 5 of the same chapter. The tax was properly levied against David & German, and we think the trial court was

justified in finding that Mrs. David, by the use of ordinary care and diligence, might have known of the unlawful sales.

A further question is made as to the amount of tax that should be assessed. The board levied a tax of four hundred and fifty dollars, and the district court confirmed the levy. Appellant contends that the tax should have been *pro rata* for that part of the year 1895 remaining after the listing of the property, amounting to six dollars and sixty cents. This contention calls for the construction of some very ambiguous legislation. The act of the general assembly to which we have referred was approved March 29, 1894, and took effect upon its publication, which occurred on April 3 and 4, of the same year. Section 1 of the above chapter provides for the assessment of a tax of six hundred dollars per annum against every person engaged in selling, or keeping with intent to sell, any intoxicating liquors, and upon the real property and the owner thereof within or whereon the intoxicating liquors are kept or sold. Section 2 of the same chapter makes it the duty of the assessor, in the months of December, March, June, and September of each year, to return a list of the places wherein the intoxicating liquors are sold. Section 9 makes it the duty of the board, at its regular meeting, in September, to levy an annual tax of six hundred dollars, payable semi-annually, on or before the first days of April and October of each year, against the person conducting the business, and against the real property and the owner thereof, and further provides that, at each regular meeting of the board, it shall examine the assessment books, and levy a tax against such persons as have become liable thereto, and who have not been taxed as hereinbefore provided, for the same year, "but only a *pro rata* tax for the remainder of the year depending upon the

time of the assessment." Section 17 of the chapter provides that in cities of five thousand or more inhabitants the tax may be paid quarterly in advance on January, April, July, and October of each year; and, upon certain conditions, such payments may be a bar. Sections 4, 5, and 6 of the same chapter relate to applications to rebate the tax, the trial thereof before the board of supervisors, and to appeals to the district court; and section 7 is as follows: "Should it be found in the trial before the board of supervisors, or on appeal, that sales of intoxicating liquors in or upon the premises described, had not continued for more than six months in the year for which the taxes were assessed, then the total tax for the year, exclusive of costs may be reduced *pro rata*." The assessment in this case was not made in time so that the board could make the levy at its September meeting. Not having been made until December 26, the board could not make the levy until the January meeting; and the statute says that, when so levied, it shall be but a *pro rata* amount of the tax for the remainder of the year, dependent upon the time of the assessment. Section 7 also says that, if the sales had not continued for more than six months of the year for which the taxes were assessed, the total tax for the year may be reduced *pro rata*.

Now, it appears in this case that the sales had not continued more than six months in the year 1895, and it follows that the total tax *for the year* may be reduced *pro rata*. The ultimate question to be determined is, what is meant by the word "year" as used in this statute? Does it mean from January to January, from April to April, from October to October, or from the time when the tax is assessed to a corresponding period in the next year? Paragraph 11 of section 45 of the Code of 1873 says that, in construing statutes, the following rules shall be observed, unless such construction would be inconsistent with or repugnant

to the context: "The word 'month' means a calendar month, and the word 'year,' and the abbreviation 'A. D.,' are equivalent to the expression' year of our Lord.'" Unless, from the context or otherwise, a different intent is gathered, the word "year," when used in a statute, is construed to mean a calendar year. *U. S. v. Dickson*, 16 Pet. 162; *Engleman v. State*, 2 Ind. 91 (51 Am. Dec. 494). With this rule in mind, we turn to the statute, and find, from a reading of sections 7, 9, and 17 of the chapter, that no other than the calendar year was intended. Indeed, it appears from these sections that such was the period of time the legislature had in mind, for it said in section 17 that the tax may be paid quarterly in advance on the first days of January, April, July, and October of each year; and in section 9 it is said that if the tax be not levied at the regular September meeting of the board, it should be only for a *pro rata* amount of the tax for the remainder of the year; and in section 7 it is said that, if the sales had not continued for more than six months in the year for which the taxes were assessed, they may be reduced *pro rata* upon the trial before the board or upon appeal to the district court. We think it clear that the calendar year is the one intended. There is an apparent conflict between sections 7 and 9 of the chapter, but it is not necessary in this case to attempt a reconciliation. The tax was levied at the January, 1896, meeting for the year 1895; and by section 9 it is provided that, when so levied, it shall be only a *pro rata* tax for the remainder of the year, dependent upon the time of the assessment. The assessment was made on December 27, 1895. The remainder of the year was but four days, for which a levy might be made. The tax was not payable in advance, as provided in section 17 of the chapter, for the town in which the business was conducted did not have the necessary population for this section to apply. It is unnecessary for us to determine whether section 7

or section 9 applies to this case, for under either the tax should be levied for but the four remaining days of the year. The amount which should have been levied was six dollars and sixty cents, and to this extent the levy will be sustained. Appellant will pay one-fifth of the costs of this appeal, and appellee the remainder.— MODIFIED AND AFFIRMED.