GEORGE W. SANBORN *et al.,* Appellants, v. CITY OF MASON CITY *et al.*

**Special Tax Assessment:** CONSTRUCTION OF SEWER: *Completion of Work.* An ordinance for the construction of a sewer in a certain district provided that the sewer committee should report the entire cost thereof on its completion and acceptance, and that each lot of land in the district should be assessed its proportion of the entire cost in constructing the same. Provision was then made as to the manner of making assessment "when the sewer authorized shall have been completed." Acts Twenty-fifth General Assembly, chapter 7, section 10, provides that, when such improvement shall have been completed, it shall be the duty of the council to ascertain the cost thereof. Section 11 declares that, when the whole or any part of the cost

of constructing such sewer shall be required by ordinance to be
paid by the proceeds of a sewer tax, said city shall have the
power to levy the entire cost of such sewer at once upon all
the taxable real property within such district. *Held*, that a
special assessment for the construction of a sewer could not be
levied and collected in advance of the completion thereof.

STATUTES: *Mandatory*. Where, before the completion of a sewer,
the city passed an ordinance directing that the probable cost
of the entire improvement be estimated, and a tax levied for the
payment thereof and suit was brought to enjoin the enforce-
ment of the assessment on the ground that such a tax was pro-
hibited by Acts Twenty-fifth General Assembly, chapter 7,
section 10, providing that, when such improvement shall have
been completed, it shall be the duty of the city council to as-
certain the cost thereof, and assess the same against the prop-
erty benefited, a contention that the tax was valid, on the
ground that the time for levy of the assessment as prescribed
by such section was directory merely could not be sustained,.
since the vice in the ordinance was not in the time of levy, but
in the levy of a tax for the "estimated and unascertained" cost
of the improvement, which was prohibited.

*Appeal from Cerro Gordo District Court.*—HON. JOHN C.
SHERWIN, Judge

THURSDAY, MAY 23, 1901.

MASON CITY has been divided into sewer districts,
through one of which (Willow Creek), by ordinance and
resolution, the city council ordered the main artery of the
sewer system to be constructed, in length 9,605 feet, of
which 1,250 was to be open, and the remainder closed. The
contract was let to Ford & De La Hunt, September 28, 1896,
at the lump sum of $21,370, and on October 26th following
$960 was added for covering the 1,250 feet which was to be
open. The work was to be completed June 1, 1897, but,
after about 2,600 feet of the sewer had been put in, the coun-
cil, on December 8, 1896, extended the time to November
7, 1897, and paid the contractors $3,000. Work under the
contract not having been resumed, on July 15, 1897, the coun-
cil, by motion or resolution, estimated the cost of completing
the sewer over and above the contract price at $6,670 to·

cover engineering and contingent expenses, and ordered that "a levy of 5.7 per cent. be made on all real property included in the Willow Creek district." Proceedings were then taken resulting in making the levy, and properly certifying the same to the county auditor. The various tracts of land belonging to plaintiffs have been advertised for sale, to enjoin which this action was brought. To the petition alleging the foregoing facts in detail a general demurrer was sustained, and as plaintiffs elected to stand on the ruling, their petition was dismissed, and they appeal.—*Reversed.*

*Cliggett & Rule* for appellants.

*R. Wilber, Blythe, Markley & Smith,* and *T. G. Mc-Dermott* for appellees.

Ladd, J.—The controlling question raised by the record is whether, under chapter 7 of the Acts of the Twenty-fifth General Assembly and the ordinances of the defendant city, a tax for the construction of the main artery of a sewer system of a particular district may be levied and collected on the real estate of the district in advance of its completion. That the ordinance contemplated a completion before the levy is put beyond controversy by the language employed. Section 6 thereof provides for a report of the entire cost by the sewer committee "upon the completion and acceptance of the sewer" and the assessment of "each owner and lot and parcel of land in said Willow Creek sewer district according to its value, its proportion of the entire cost in constructing said sewer." That is, the entire cost found and reported by the committee "upon the completion and acceptance of the sewer" is to be distributed on the real estate of the district according to its assessed value. The following section directs the manner of making the "assessment when the sewer authorized by this act shall have been completed"; that is, by preparing a plat, issuing notices to landowners, hearing objections, etc. These are the only portions of the ordinance relating to the levy and the time of

doing so. Without repealing or modifying this ordinance, it is at least doubtful whether the method prescribed for raising the funds for the sewer, if permitted by statute, might be abandoned for another; but that point is not argued, possibly for the reason that the chapter mentioned provides for no other mode. It has long been the policy in this state not to exact the payment of assessments for local or special improvements, such as street paving, gutters, and the like, as distinguished from those of the entire municipality, before their completion. Such has been the tenor of legislation from the organization of the state. Thereby the cost is definitely ascertained, and no more exacted from the property holder than is essential to meet it. Hence no provision is made for the return of any excess, as, under such a system, if computation is accurate, there can be none. Were money to be collected in advance on mere estimates, it might often happen, on the° one hand, that enough would not be raised, and, on the other, an excess might remain unexpended. We think the provisions of chapter 7, Acts Twenty-fifth General Assembly, not a departure from this policy. Under it the paving or curbing of streets and the construction of sewers must be done under contract made with the lowest bidder after public notice. Bonds or certificates to provide for the payment of the improvements are to be issued as the work progresses for not exceeding six-sevenths of its costs and the proceeds derived from their sale "paid out on requisition of the council, accompanied by certificates of the city engineer or board of public works that the work has been done or material furnished to the amount of the requisition, and that it is required for the payment of the same." See sections 6-9. Section 10: "When any such improvement shall have been completed, it shall be the duty of the council to ascertain the cost of the improvement, and also what portion of such cost so assessable shall be assessed as provided by law or by ordinance of such city upon the property fronting or abutting or adjacent to the improvement." The remainder of this section relates to the assessment of railroad or street-

railway property, and need not be set out. It thus appears
that not until completion is the council required to deter-
mine the cost, and nowhere in the chapter is an estimate
thereof mentioned. The following section relates to the man-
ner of ascertaining the proportion of the cost to be levied
against each parcel of ground, and is in two parts. The first
makes provision for assessing lots fronting, abutting, or ad-
jacent to the improvement. The assessments against these
are necessarily according to the benefits received, whatever
be the rules adopted for determining these. For this pur-
pose a plat is to be made, with the amount assessed against
each parcel of ground with other particulars indorsed
thereon, public notice given that opportunity for inspection
be afforded, and that objections thereto must be filed before
the next meeting of the council; and said "council at such
meeting, or as soon thereafter as practicable, and after hear-
ing and deciding upon any objection so filed, if any, and after
making all necessary corrections in the assessment, as pro-
posed by said plat, shall assess and levy as a special tax upon
the property of each owner, liable to special assessments as
aforesaid, its just and true proportion according to law and
according to said assessments proposed by said plat as cor-
rected and approved of the amount to be specially assessed
for any such improvement." Thus considerable time of ne-
cessity elapses for the accomplishment of the proportionate
distribution of the cost to the several properties beneficially
affected. But, when this is to be paid by the property owners
of an entire district according to its assessed value, there is
no occasion for notice and hearings. The distribution of the
burden is then a mere matter of computation. Hence the
second part of section 11 reads: Provided, that when the
whole, or any part of the cost of constructing a sewer, shall
be required by ordinance of any city to be paid by the pro-
ceeds of a sewer tax, to be levied upon all the property of any
sewer district, according to valuation, that said city shall
have the power to levy the entire cost of such sewer, re-

quitted to be paid by such sewer district, at once upon all taxable real property within such district, and determine by ordinance or resolution the whole percentage of tax necessary to pay such cost, and the percentage to be paid in any one year, and when the same shall become delinquent, and such taxes shall be entered, and payable and collectible, as other special taxes in this chapter provided for; and said city shall have the right to issue bonds in anticipation of the payment of such taxes in the same manner, and with the same effect, as herein provided for bonds issued for taxes levied upon specified abutting, or adjacent property." "At once," as here employed, evidently refers to the time when the cost is ascertained by the council under section 10, and what is meant is that without the delay incident to the preceding part of section 11. The "entire cost" of such sewer, not its estimated or probable cost, may be levied on the property of the district. No provision whatever for ascertaining the cost, other than that quoted from section 10, is found in the chapter, and to that cost the portion of the section set out must refer. If so, then the law contemplates the assessment and levy after the completion of the improvement for the payment of its actual cost, and not before, to cover the estimated or probable cost.

II.    But it is argued that the statute with respect to the time of making the levy is merely directory, and a substantial compliance therewith is sufficient. This might be true had it been made for the purposes contemplated by law. There is no provision for raising money for the estimated or probable cost of a proposed improvement. It is only for the ascertained cost of a completed improvement that the tax may be exacted. The question does not so much involve the time or manner of performing an authorized act as it does of doing something wholly unauthorized. In other words, it is the object of assessment and levy, and not the time and mode of making it, which was ignored by the city council; and we know of no authority

holding that this is not of the essence of the thing to be done, and the statute relating thereto mandatory.   See *Hubbell v. Polk County,* 106 Iowa, 618.—REVERSED.

SHERWIN, J., took no part.