HILL *et al.* v. WOLFE *et al.*

1. **Taxes: POWER OF SUPERVISORS TO CORRECT ASSESSMENTS: DIREC-
TORY STATUTES.** Section 739 of the Revision, as amended by
section 3, chapter 24, laws of extra session, 1861, requiring the
board of supervisors, at their regular meetings in June, to add
to the assessment any taxable property omitted by the assessor,
is merely directory as to time ; and a correction of this character
made at their meeting in September, whereby property omitted by
the assessor from his lists was made to bear its due proportion of the
public burden, was held authorized and valid.

2. —— The case is not varied, at least as to personal property, by the
fact that the assessments for the county had, before the insertion of
the omitted property, been returned to and acted upon by the State
board of equalization.

3. —— This case falls within the rule, that where a statute specifies
the time within which a public officer is to perform an official
act respecting the rights and duties of others, it will be regarded as
directory merely, unless it appears from the nature of the act or
the language used by the legislature that the designation of time
was intended as a limitation.

*Appeal from General Term, Eighth District (Johnson
County).*

WEDNESDAY, JUNE 8.

CERTIORARI. — Plaintiffs are stockholders in the Iowa
City National Bank, and were such on the first of January,
1869. Defendants are the supervisors of the county of
Johnson. This bank is located in Iowa City, and plain-
tiffs own its entire stock.

In addition to these facts, the petition further states
that assessments were made by the assessors of the city
and township, carried upon the lists of said officers, and
returned to the proper office as required by law, on and
before the third Monday in May, 1869, the same being
returned as complete lists of the property liable to taxa-

tion in said city and township respectively. These assessors omitted from their returns said shares of stock, and the supervisors, at their June meeting in that year, took no notice whatever of said non-assessment. These assessments for the county of Johnson were afterward submitted to and acted upon, as required by law, by the State board of equalization. At the September meeting the board of supervisors adopted a resolution reciting the neglect of the assessors of the township to make return of this stock or these shares, and directing the clerk to obtain lists from the bank officers and to enter the same for taxation in the proper lists of the township. This · order the clerk complied with, estimating said shares at par, and the treasurer demands payment of the taxes, which he claims to be due and owing thereon.

It is claimed by plaintiffs that the action of the board of supervisors was illegal and void, for that the said board was without legal authority or jurisdiction to order such assessment or valuation, and especially so at their said meeting in September. Petitioners then ask that said proceedings of the board may be certified to the court, to the end that said assessment and valuation of said shares, and the entire proceedings in relation thereto, may be declared null and void.

To the petition there was a demurrer, which was sustained; plaintiffs excepted, and this judgment being affirmed in the General Term, they appeal to this court.

*S. J. Kirkwood, Clark & Haddock,* and *Edmonds & Ransom* for the appellants.

*Robinson & Patterson* and *Williams & Gaston* for the appellees.

WRIGHT, J. — The plaintiffs insist that as no action was taken at the June meeting of the board of supervisors in

relation to said assessment, the power to make or order the same was at an end, and that the entire proceedings at the September meeting were void. The defendants, on the other hand, maintain that it was their duty to place upon the lists any property omitted by the assessors, and that this duty they were as much bound to, and had as much power to, discharge in September as in June. And, aside from a point to be hereafter noticed, we have in these propositions the points maintained by the respective parties to this controversy.

By the 6th section of the act creating the board of supervisors (Rev. § 307), they are required to meet on the first Monday of January and June, and the first Monday after the general election in each year. Then section 28 of the revenue act (Rev. § 739), constitutes the supervisors a board for the equalization of the assessments, at their regular meetings in June, and *next succeeding the general election ;* and at these meetings they are required to add to said assessment any taxable property not included in the assessment as returned by the assessors, placing the same on the list of the proper township, and shall assess the value thereof.

The power to levy the requisite taxes is given to the board by sections 710 and 746 of the Revision (§§ 1 and 36 of the revenue act); and this duty was to be performed at the regular meeting in June of each year.

Thus the matter stood until, by chapter 24 of laws of extra session of 1861, section two, the board were authorized to hold a meeting in September of each year, when the taxes were to be levied, and such other business transacted as might legally come before them. Then the third section amends section 739, by striking out the words " and next succeeding the general election," and repeals all acts and parts of acts inconsistent with said act, or said chapter 24.

Hill v. Wolfe.

And thus we have, as briefly as could well be given, the state of this question, so far as it rests upon the pro- visions of the statute.

The rule is, that when a statute is merely directory, a thing therein required, omitted to be done at the proper time, may be allowed afterward. *Rex* v. *Loxdale,* 1 Burr. 455. If, however, a thing is prohibited, or if it is to be done at one time and prohibited at any other, such pro- hibition cannot, without judicial legislation, be disre- garded. *Staylor* v. *Hulings,* 7 Ind. 144. And the very question we have to determine is, whether, taking these statutes altogether, there is a limitation of the authority of the supervisors to add to the assessment any omitted personal property, or whether the naming of the time is directory, merely.

In answering this inquiry we remark, in the first place, that we find nothing in the statute, in the way of negative words, restraining the board from exercising this power after the June meeting. Prior to the act of 1861 (ch. 24, p. 31), there was no provision for a September meeting. The original act (Rev. ch. 22, art. 11, § 6), provided for meetings in January, June, and the first Monday after the general election in each year. The primary object of this last meeting is apparent enough from article 15 of the same chapter, and this was to canvass the votes at such election. Rev. p. 54. Aside from this, it scarcely had a place as a business meeting. And this was more particularly so, after the act providing for a meeting in September. The thought doubtless was, in striking out the words "next succeeding the general election," that the supervisors should confine themselves for the most part to canvassing the returns, having now a September meeting, at which matters otherwise upon their hands, after the general election, could receive due and proper attention. In other words, while it is not said so in

words, the purpose was, by providing a September meeting, to have discharged these duties, and attended to business which they had been accustomed to pass upon at their meeting which was more especially designed to canvass the votes of the general election. And when it is understood that one section provides for the September meeting, and that the next strikes out the words "next succeeding the general election," keeping in mind the purpose and object of the law, there is to our mind little ground for claiming that such repeal, by negative words, is to be construed as denying the power claimed by the board in this instance. The argument would have had more force if the words had been stricken out, and no other meeting required. This September meeting, it must be remembered, is to be held before the clerk is required to deliver the tax book to the treasurer of the county, for this he need not do before the first Monday in November. Rev. § 748. And it is at this September meeting that the taxes are to be levied, instead of in June, as under the old statute. So that, taking sections 2 and 3 of chapter 24, extra session 1861, in connection, we repeat that they do not aid appellant's construction. If either way, the argument is with appellees, the statute possibly intending to substitute September for the meeting succeeding the election, for purposes connected with assessment, equalization and taxation.

But, however this may be, the case is, to our minds, no stronger against appellee's construction than if the statute had, without more, given the power to add to the assessment at the regular meetings in June in each year. Let us look at the question as thus presented, or upon the assumption that there are no words employed which either expressly, or by the required implication, forbid the doing of the act complained of after the June meeting.

One thought to be here considered is, whether the

object of the law — not its general purpose, but one of its specific aims and objects — will not fail, if this provision is held to be mandatory rather than directory. Now it is in accord with the theory of every revenue law, that all property, unless exempt, shall bear its due and just proportion of the public burdens. Any construction which will relieve any part of the property in this State from liability to this just and most reasonable demand and burden should be avoided, if at all consistent with principle and established precedent. It is true that a sufficient revenue might be collected to support the State and county governments, though the right to make these additions should be denied after the June meeting, and thus there would, perhaps, be no failure of the principal object of the law. And yet we know full well it might frequently occur that property, by reason of the carelessness or oversight of an officer, would escape the payment of its just burdens. And why this, when the same tribunal, instead of adding it in June, does it in September, before the books pass into the hands of the treasurer, before they are complete, before the tax is levied, and before any one can reasonably be misled? We are not to be understood as holding, that, regardless of rules, of legislative requirements, and in the face of those omissions of officers which conclude the state or county, property can be sought for and at any time added to the lists. All that we are now seeking to enforce is, that, by the policy of the law, all property should pay its just proportion of the taxes, and this obligation should not be avoided by failing to put it upon the lists to-morrow instead of to-day, or next week instead of this, when it is thus placed by the proper board, when in session, and before the book is complete or has passed into the hands of the treasurer. To permit it to thus escape taxation would be plainly against public policy, and there would

be in many instances a failure of what is manifestly just and reasonable. The treasurer, even, is given power at any time to add to the list, or assess any omitted real property and to collect the taxes thereon (Rev. § 752); and the clerk may correct any clerical or other error in the assessment or tax book, even after the book has passed into the treasurer's hands (§ 747; and see *Jones* v. *Tif-fin*, 24 Iowa, 190). And would it not be strange that the legislature intended to withhold the power exercised in this instance from the supervisors? And, in this connection, we remark that the State board of equalization have nothing to do with *personal property;* their duties relate to the *real property* in the several counties (Rev. § 742, 743); and any argument drawn from the fact that this addition was made *after* the action of the State tribunal, is therefore without force. Then, too, we know, practically, that these additions can and do make so slight a change in the aggregate valuation of the State, that a knowledge of them can be of no possible moment in fixing the amount of the State levy.

But let us for a short time look at the question in the light of adjudications. A school tax in New York was held to be well laid, though voted at a meeting of which there was no notice, as required by the statute, the statute being held directory merely. *Marchant* v. *Langworthy,* 6 Hill, 646. And see, too, *Gale* v. *Mead,* 2 Denio, 160. The case of *The People* v. *Allen,* 6 Wend. 487, is really no stronger than those just cited. There, however, the action was for fines imposed by a court martial appointed more than a month after the time provided for and required by the law. And yet it was held that the fines were legally imposed. The act was considered a mere direction and not a limitation. "There is nothing," says MARCY, J., "in the nature of the power showing that it might not be as effectually exercised after the first of

June as before, and the act giving it contains no prohibition to exercise it after that period." And he adds, "the general rule is, that when a statute specifies the time within which a public officer is to perform an official act respecting the rights and duties of others, it will be regarded as directory, merely, unless the nature of the act to be performed, or the language used by the legislature, shows that the designation of the time was intended as a limitation of the power of the officer." While the cases upon this subject are without number, and by no means reconcilable, it may be doubted whether any of them state the rule more clearly or correctly than in this quotation. Any other rule would defeat sheriff's sales where the officer fails to make his return within the time limited by statute. And yet upon this subject see further, *Hooker* v. *Young*, 5 Cow. 269; *The People* v. *Kunkle*, 9 Johns. 147; *Childs* v. *McChesney*, 20 Iowa, 431, and cases there cited.

The case of *Pond* v. *Negus*, 3 Mass. 230, is not very unlike this. There the officers assessed the tax *after* the time fixed or named in the law, and it was held that naming the time was to be taken as directory and not as a limitation. This was followed in *Williams* v. *School District*, 21 Pick. 75; and see also *City of Lowell* v. *Hadley*, 8 Met. 180; and further, *The People* v. *McGinley*, 4 Ind. 7; *Colt* v. *Eves*, 12 Conn. 243; *Savage* v. *Walsh*, 26 Ala. 620; Sedgwick St. and Const. Law, 368, *et seq.*; see also a very clear statement of the rule in *Torrey* v. *Milbury*, 21 Pick. 67, which was a tax case. The doctrine in another form, and by no means in conflict with the views above stated, will be found in *State* v. *Lear*, 9 Wis. 292. The rules indicated by the cases are quite distinctly stated by Judge Cooley (Const. Limitations, 77), and guided by these, or any of the cases cited above, this assessment was good. The substantial purpose of the

Hill v. Wolfe.

statute was accomplished and the rights of no one sub-
stantially prejudiced. We can conceive of no good
reason why this act could not as well be done after the
time prescribed as on the day or at the time named. The
idea that the tax payer should have his day in court;
that he is not bound to follow this matter up at every
meeting of the board after June; that the act of adding
to the assessment is judicial in its nature, — we say these
considerations cannot affect the question. The act is no
more judicial than that of the assessor in making all
assessments; than that of the clerk in correcting errors
and mistakes; or that of the treasurer in adding omitted
real property. Then, too, this is one of those matters
falling within the provisions of the statute which were
intended to promote method and insure system and unifor-
mity, rather than of the essence of the thing to be done;
and, as to such, it is never necessary that a party shall
have, as it is termed, his day in court. And remarking,
finally, upon this question, that it was plaintiffs' duty to
list these shares, their duty to assist the assessor in listing
all their property subject to taxation (Rev. §§ 714, 753;
laws of 1868, ch. 108, which provides for the taxation of
the shares of national banks), we see no ground upon
which this assessment can be avoided. There is no sug-
gestion of fraud, of overvaluation, or any thing of the
kind. Plaintiffs stand upon their rights, as they claim
them, under the law; and this aspect, and this alone, we
have endeavored to consider. See further, *Dishon* v.
*Smith*, 10 Iowa, 218, and cases cited; also, *Torrey* v.
*Hughes*, 26 N. Y. 514. *Town of Williamsport* v. *Kent*,
14 Ind. 306, cited by appellants, is not analogous, is of
questionable correctness, and states a result, without
undertaking to support it by either reason or authority.

In argument it is insisted that these shares, if taxable,
should have been placed upon the lists for Iowa City, and

not for the township. And this view, we think, under the law, is correct. It is very doubtful, however, whether petitioners intended to rely upon this as an *illegal act*, within the meaning of the law, on the part of the supervisors. The plain purpose of the petition and proceeding was to test the power of the board to assess these shares at the time named, or after the adjournment of the June meeting. The demurrer to the petition raised this question, and this alone. The petition nowhere, in terms, claims, that if liable to assessment the shares should have been assessed in the city and not in the township, nor that they were *not* assessed in the *city*. The board in its order followed literally the language of the law, by placing the property " in the list of the proper township." Rev. § 739. Of course it could be thus and still be in the city list, for the city is in the township. So that, after looking at all the averments of the petition, the evident object of the proceeding, and the questions raised by the demurrer, we are inclined to overrule the point thus made. The property should, we concede, be upon the city list, and if it is not — certainly upon request made and refusal to so place it, if, indeed, not before — plaintiffs have ample remedy.

Affirmed.