F. M. HUBBELL v. POLK COUNTY, *et al.,* Appellants.

**Intoxicating Liquors: LEVY OF TAX.** The requirement of Acts Twenty-fifth General Assembly, chapter 62, section 9, that the board of supervisors at the regular meeting in September shall levy an annual tax upon premises used for the sale of liquors is directory, and the fact that levy was not made until December will not invalidate it when the delay did not prejudice the person assessed.

**EVIDENCE:** *Presumptions.* It will be presumed in support of the validity of a tax that it was levied at a regular meeting of the board of supervisors where that is an essential requirement and the contrary is not shown.

DEEMER, C. J. and GRANGER, J., dissenting.

**REBATE.** One against whose property used for the sale of intoxicating liquors the annual tax of six hundred dollars provided for by Acts Twenty fifth General Assembly, chapter 62, section 9, has been levied is not entitled to a remission of the tax for the balance of the year where the sales were suspended after continuing about nine months.

*Appeal from Polk District Court.*—HON. T. F. STEVENSON, Judge.

THURSDAY, OCTOBER 27, 1898.

ACTION at law to recover an amount alleged to have been paid as a liquor tax, under protest. There was a trial by the court without a jury, and a judgment in favor of the plaintiff for the amount claimed. The defendants appeal.—*Reversed.*

*W. G. Harvison* for appellants.

*St. John & Stevenson* for appellee.

ROBINSON, J.—On the thirtieth day of May, 1894, the plaintiff, being the owner of lot 5 in block 25 of the original town of Ft. Des Moines, now a part of the city of Des Moines, leased it to F. V. Newman, who took possession of the leased

premises, and commenced therein the business of keeping for sale and selling intoxicating liquors, under the provisions of chapter 62, Acts Twenty-fifth General Assembly. Before Newman commenced the business, he reported the property to the county auditor for taxation, under the act specified. At a session of the board of supervisors of Polk county held on the twentieth day of June, 1894, a tax was levied on the property for the period commencing June 8, and ending December 31, 1894, which was paid by Newman. The board of supervisors did not levy any liquor tax on the property at the regular September meeting, but on the twenty-eight day of December, 1894, the board levied a liquor tax on the property, and against the plaintiff and Newman, in the sum of six hundred dollars, for the year 1895. The tax thus levied was entered upon the tax list, which was delivered to the county treasurer for collection. Newman paid the portions of the tax which fell due on the first days of January, April, and July; and on the thirtieth day of September, 1895, he discontinued business, and no intoxicating liquors were kept for sale or sold on the premises during the remainder of the year. The plaintiff appeared before the board of supervisors at its October, 1895, meeting, and asked that the portion of the tax then unpaid be remitted, on the ground that the business for which it was levied had been discontinued; but the request was denied. The property was advertised by the county treasurer for sale for the unpaid portions of the tax; and on the sixteenth day of December, 1895, the plaintiff, to prevent the sale of his property, paid, under protest, the amount for which the sale was advertised. This action is brought against the county and its treasurer, to recover the amount thus paid, with interest.

Section 9, chapter 62, Acts Twenty-fifth General Assembly, which governs this case, contains the following: "At the regular meeting of the board of supervisors in September, they shall levy an annual tax of six hundred dollars  *  *  * against each person carrying on or conducting a place for the

sale of intoxicating liquors, and also against the real property, and the owner thereof, in which or upon which said place is located . * * * At all regular meetings, the board of supervisors shall examine the assessment book of liquor dealers, and levy taxes against such persons as shall have become liable thereto under the provisions of this act, who have not already been taxed as herein provided for the same year, but only a pro rata amount of the tax for the remainder of the year, dependent upon the time of assessment." It was determined in *David v. Hardin County,* 104 Iowa, 204, that the year contemplated in that section is a calendar year; and in *Engelthaler v. Linn County,* 104 Iowa, 293, it was decided that there cannot be a rebate of any part of the tax levied where the sales are continued more than six months of the year. The sales involved in this case were continued nine months of the year 1895. Therefore the relief demanded should be denied if there was a valid levy of the tax for that year. It is claimed that the levy was without effect, because made in December, instead of in September of the year 1894. Is the statute directory or mandatory? It was said in *French v. Edwards,* 13 Wall. 506, that "there are undoubtedly many statutory requirements intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such, generally, are regulations designed to secure order, system, and dispatch in proceedings, and by a disregard of which the rights of parties cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory, unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory, but mandatory. They must be followed, or the acts done will be invalid. The power of the officer in all such cases is

limited by the measure and conditions prescribed for its exercise." In Cooley Constitutional Limitations (5th ed.), 92, after a review of authorities, the rule is stated as follows: "Those directions which are not of the essence of the thing to be done, but which are given with a view merely to a proper, orderly, and prompt conduct of business, and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it may still be sufficient if that which is done accomplishes the substantial purpose of the statute. But this rule presupposes that no negative words are employed in the statute which expressly or by necessary implication forbid the doing of the act at any other time or in any other manner than as directed." In Sutherland Statutory Construction, sections 446-448, rules are stated as follows: "The consequential distinction between directory and mandatory statutes is that the violation of the former is attended with no consequences, while a failure to comply with the requirements of the other is productive of serious results. This distinction grows out of a fundamental difference in the nature, importance, and relation to the legislative purpose of the statute so classified." And "where the provision is in affirmative words, and there are no negative words, and it relates to the time or manner of doing the acts which constitute the chief purpose of the law, or those incidental or subsidiary thereto, by an official person, the provision has been usually treated as directory. Generally it is so, but it is a question of intent." Also, "provisions regulating the duties of public officers, and specifying the time for their performance, are in that regard generally directory. Though a statute directs a thing to be done at a particular time, it does not necessarily follow that it may not be done afterwards. In other words, as the cases universally hold, a statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory, unless the nature of the act to be performed, or the phraseology of the

statute, is such that the designation of time must be considered as a limitation of the power of the officer." In 23 Am. & Eng. Enc. Law, 455, it is said: "It is, in general, true, that negative terms in a statute show a legislative intent to make the provision imperative, requiring a strict performance in respect of both time and manner. Yet, as a rule of universal application, this cannot be relied upon, as provisions framed in negative language have been adjudged to be directory merely. Nevertheless, it is undoubtedly true that a design to make a provision merely directory is more rarely to be found under negative words. On the other hand, the absence of negative words from a statute is not always conclusive of an intention that the provision is to be regarded as directory simply, as affirmative words, if absolute, explicit, and peremptory, showing that no discretion was intended to be given, may, and often have been, held to render the statute mandatory." On page 458 of the same work the rule is stated as follows: "Statutory prescriptions in regard to the time, form, and mode of proceeding by public functionaries are generally directory, as they are not of the essence of the thing to be done, but are given simply with a view to secure system, uniformity, and dispatch in the conduct of public business."

These rules have abundant support in adjudicated cases, and apply to statutes which prescribe methods of levying taxes. It is said in Cooley on Taxation (page 284) that "all legislation must be supposed to take into account the possible, if not the probable, mistakes and irregularities of officers in executing the provisions of the law; and it is hardly reasonable to infer an intent on the part of a legislative body that a failure of administrative officers to comply with any provision made for the benefit of the state exclusively, or merely as a guide in orderly proceedings, should deprive the state of all benefit to be derived from a compliance with other provisions that embody the main purpose and object of the law. Nor, on the other hand, is it to be supposed the legislature intended its own securities for the protection of individual rights and property should be disregarded with impunity." The deci-

sions of this court are in accord with the authorities cited.
Section 746 of the Revision of 1860 provided that "at the
regular meeting in June in each and every year the board of
supervisors shall levy the requisite taxes for the current year,
in accordance with law." · Section 2, chapter 24, of the Acts
of the Extra Session of the Eighth General Assembly, which
took effect in June, 1861, provided that "the board of super-
visors of each county shall hold a session on the first Monday
of September, in the year 1861, and each year, thereafter, at
which session they shall levy the several taxes as required by
sections 710 and 746" of the Revision.    Yet it was held in
*Easton v. Savery,* 44 Iowa, 654, that the statute last men-
tioned was directory, and that taxes levied at the June meet-
ing of the board were valid.    It was said:  "No one should
be at liberty to plant himself upon the nonfeasance or mis-
feasance of officers under the revenue law, which in no way
concern himself, and make them the excuse for a failure on his
part to perform his own duty.    It was the duty of the defend-
ants to pay their taxes, and it is no excuse that the officers did
not strictly perform their duty unless, as we have said, defend-
ants were prejudiced thereby."    In *Perrin v. Benson,* 49 Iowa,
325, it was held that "where a levy is not made at a proper
time, through negligence or mistake, it may be made at the
time fixed by law for making the succeeding tax levy."    It
appeared in that case that a school-house tax, which was voted,
and should have been levied in the year 1875, was levied in the
year 1876, and the legality of the tax was affirmed.    See, also,
*Hill v. Wolfe,* 28 Iowa, 577; *Prouty v. Tallman,* 65 Iowa,
354; *Burlington Gas Light Co. v. City of Burlington,* 101
Iowa, 458.

The levying of the tax in controversy did not in any
manner prejudice the plaintiff.    He did not lose any right
by the delay from September to December in making the
levy.    The undisputed fact is that the tax in question
ought to have been levied in September, 1894, and the
plaintiff should not be permitted to profit by the mis-
take or negligence of the board of supervisors in not making

the levy until December. The only part of the section fixing the time for making the levy which can be regarded as negative in character is this: "But only a pro rata amount of the tax for the remainder of the year, dependent upon the time of the assessment." It seems to be clear, however, that the negative or limiting effect of that clause relates to the amount, and not to the time of the assessment. The preceding words, "for the same year," refer not to the year in which the meeting of the board of supervisors at which the tax is levied is held, but to the year for which a tax has already been levied. That the tax for an entire year may be legally levied at a meeting other than the one for September is, we think, evident. If Newman had commenced the sale of intoxicating liquors in December, 1894, and the place in which the business was carried on had been listed for taxation in that month, the board of supervisors would have had the power at the meeting of January, 1895, to levy a tax for the part of the month of December, during which the business was carried on, and also for all of the year 1895, notwithstanding the provision that "only a pro rata amount of the tax for the remainder of the year" should be levied; and we are of the opinion that there is no well-grounded reason for denying to the board the power to levy the 1895 tax in the year 1894, after the September meeting.

Whether the levy in question was made at a regular meeting is not shown. The law in force at that time provided that the members of the board should meet on the first Mondays of January, April, June, September, and the first Monday after the general election in each year. The record does not show affirmatively that the tax in question was levied at a regular meeting of the board, but the appellant states in argument that it was levied during the "November meeting, and on December 28, 1894." This is not denied by the plaintiff; but he states that "counsel for the county says that this meeting in December was an adjourned session of the regular November meeting of the board, * * * but he is not borne out by the record." Still, conceding this to

be so, we have the question yet to determine: "For what period may the board of supervisors, at any regular session in a given year, other than the September meeting, levy a liquor tax?" The presumption is that the tax was levied at a proper time, and the burden was on the plaintiff to show that the presumption is not well founded. Having failed to do so, we must presume that the tax was levied at a regular meeting, if that was essential to its validity. Since it is clear that the plaintiff was not prejudiced by the levying of the tax in December instead of in September, there does not seem to be any sufficient reason, in view of the language of the statute and the authorities cited, for depriving the county and city of the benefit of the tax. We conclude that judgment should have been rendered in favor of the defendant for costs, and the judgment of the district court is therefore REVERSED.

GRANGER, J. (dissenting).—The pivotal question is as to the authority of the board of supervisors to levy the annual tax at another meeting of the board than the regular one in September. The holding of the majority is that it may be done at a regular meeting not in September, and it is left in doubt if even a levy at a regular meeting would be essential to its validity. From such a holding I dissent, because I think it violates the letter and spirit of the statute, is opposed to a former construction of the law by this court on the same subject, and it is inequitable. I make no contention as to the general rules announced in the opinion, and I favor a liberal construction of the law, to the end that the general revenues for the conduct of the government may be secured; and I may add that I favor a liberal construction of the law in question to the end that the legislative purpose may be as fully attained as possible. That the principal object of the law was the attainment of revenue I do not think; but, on the contrary, I regard its provisions as to assessments as but incidental, and designed, mainly as a burden upon the liquor traffic, with a view to discourage it; so that the reasons for treating the general law as to public revenues as directory are without special, if any,

force in its construction. These reasons, however, might not lead me to treat the provisions of the law in question, as to the levy of the annual tax, otherwise than as directory, were it not for the conclusive terms of the law against such a construction. Section 9 of the act is the one giving authority to levy the annual tax, and it also makes provision for the levy of a pro rata tax. The section is so much of an argument in itself that I quote it in this connection: "Sec. 9. At the regular meeting of the board of supervisors in September, they shall levy an annual tax of six hundred dollars, payable semi-annually at the time and place as hereinafter provided against each person carrying on or conducting a place for the sale of intoxicating liquors, and also against the real property, and the owner thereof, in which or upon which said place is located: provided, that if the application is made to cancel the tax as hereinbefore provided, and the trial of the cause should be delayed for any reason, then the levy, if any be made, shall be made at the next regular meeting of the board. At all regular meetings, the board of supervisors shall examine the assessment book of liquor dealers, and levy taxes against such persons as shall have become liable thereto under the terms of this act, who have not already been taxed as herein provided for the same year, but only a pro rata amount of the tax for the remainder of the year, dependent upon the time of assessment." Prior sections of the act provided for an application to rebate or cancel the tax after it has been listed by the assessor. To meet conditions under which the levy might not be made at the prescribed session, because of delays occasioned by such applications, the section authorizes such a tax to be levied at the next regular meeting of the board. In both cases there is a limitation, by the language of the law, to a particular session. These might not be conclusive against construing the statute as directory; but, having prescribed the time for the levy of the annual tax, the section proceeds to provide what the board may do at all regular meetings, which is that, as to taxes not already levied as therein provided for the same year, the board may levy taxes, but with this limita-

tion: "But only a pro rata amount of the tax for the remainder of the year, dependent on the time of the assessment." Thus, we see that the legislature has, in terms, prescribed what may be done by the board at each of its regular meetings, and, as to such meetings, other than the levy of the annual tax, "as herein provided," there is the plain limitation upon the authority of the board to levy other than a pro rata tax. The statute seems to me hardly open to construction. I feel confident no case can be found where a court has held such a statute directory. As I view the statute, it is as if there was a provision that the annual tax should not be levied at a time other than as specified. The provisions for the levy of the pro rata tax make the public absolutely secure against loss of revenue because of a failure to levy the annual tax; so that the reasons fail under which statutes providing for general revenues are held directory.

This court has once expressed itself on this subject in what seems to me to be plain and conclusive terms. In *David v. Hardin County*, 104 Iowa, 204, we had under consideration the authority of the board, at its January meeting, to levy taxes for a part of the preceding year. The authority of the board to levy such taxes at a January meeting was so far involved that we stated the substance of section 9 of the act, as to the levy of the annual tax at the September meeting; and then, touching its authority at other meetings, we also stated the substance of the law showing such authority, and then quoted the limitations thereon as follows: "But only a pro rata tax for the remainder of the year depending upon the time of the assessment." In the opinion it is further said: "The assessment in this case was not made in time so that the board could make the levy at its September meeting. Not having been made until December 26th, the board could not make the levy until the January meeting, and the statute says that, when so levied, it shall be but a pro rata amount of the tax for the remainder of the year, dependent upon the time of the assessment." My view of the law could not well have a more direct recognition by this court. I should say that the

question of the authority of the board to levy the annual tax was not involved in that case directly, but that of authority to levy the pro rata tax was, which, incidentally, includes the other.

I have said that the conclusion of the majority is inequitable. My reason for the statement is this: The careful reader of the act authorizing the levy of the tax will see that the purpose was to impose such taxes for the period in which the business was carried on, except in cases of the annual levy, when it is carried on more than six months of the year, but not the full year. In cases where the business is not carried on to exceed six months, the law provides for a rebate of the tax pro rata. The seller in this case was not standing on technicalities, but paid the taxes quarterly, as if legally levied, for three-fourths of the year, and as long as the business was conducted. The payment of the tax in question for which recovery is sought was demanded after the business was closed, and paid under protest. In my judgment, it ought to be refunded, and the judgment below AFFIRMED.

DEEMER, C. J.—I concur in the conclusion reached by GRANGER, J., in his dissenting opinion.