YOUNKER BROTHERS, INC., Appellant, v. HARRY ZIRBEL et al., Appellees (and one other case).

No. 46309.

DECEMBER 14, 1943.

Gamble, Read, Howland & Rosenfield, of Des Moines, for appellant.

Fred T. Van Liew, Charles Hutchinson, and Herrick, Sloan & Langdon, all of Des Moines, for appellees.

BLISS, J.— The plaintiff is the lessee of two separate pieces of property—Lots 3 and 4, and Lots 5 and 6, all in Block 1, of the City of Des Moines—in which it operates a department store. The lease provides that it shall pay the taxes on the property. In 1941, Lots 5 and 6 were assessed at a valuation of $845,950 and Lots 3 and 4 at a valuation of $780,580. As shown by the return

of the writ, J. B. Tusant, the assessor, upon information received on April 29, 1941, that the assessments on these properties were too low as compared with surrounding properties, after further investigation decided the assessments should be raised. He therefore submitted written recommendations to the board of review, which bear date of April 29, 1930, but which he states were signed by him at a later date, that the assessment of $845,950 be raised to $955,960, and the assessment of $780,580 be raised to $794,940. The raised assessments represent the one hundred per cent value of the properties. The return shows that the volume of work of these taxing officers was heavy at this time. The recommendations were received and placed of record by the board of review in its minute book, and, after consideration, were approved and ordered to be complied with on June 14, 1941. The owners of the property were notified of the increased assessments, as provided by statute, and on July 30, 1941, the protests of the plaintiff to the action of the board in raising the assessments were filed by the board. On the following day the protests were considered by the board and denied. These protests challenged the jurisdiction and authority of the board to raise the assessments after May 31st, since no protests against the original assessments had been filed by the property owner between May 1st and May 20th, as provided in section 23 of chapter 202 of the Acts of the Forty-ninth General Assembly. Without waiving this contention, the protests also alleged that the assessments as raised were not equitable as compared with assessments of other like property in the city. An appeal from the action of the board to the district court of Polk county was then perfected by the plaintiff herein, and these appeals are now pending. After the taking of the appeals, and in September 1941, the certiorari actions were begun.

The appellant contends that it had no right, under the statutes, to file the protests which it did or to appeal from the adverse order of the board, but insists that it did both as a precaution and a protection only in the event the certiorari proceedings were annulled.

I. Appellant's appeal presents four contentions, to wit: 1. Appellant had no right to protest the action of the board in raising the assessments on June 14, 1941. 2. Appellant had no

right to appeal from this action of the board. 3. Appellees had no power to raise these assessments on June 14, 1941, because appellant had no right of protest or of appeal, and the statute precluded the raising of assessments after June 1st. 4. If the statute can be construed to mean that the board could raise the assessments on that date, it violates section 6 of Article I of the Constitution of Iowa, and the equal-protection and due-process clauses of the Fourteenth Amendment to the Constitution of the United States.

 Appellant bases its third proposition upon the verity of its first and second propositions. It is our conclusion that the determination of the third proposition will dispose of all of appellant's contentions, and we will therefore direct our attention to it.

Chapter 202 of the Acts of the Forty-ninth General Assembly went into effect on February 21, 1941. Appellant's main reliance for a reversal is upon certain sections of this chapter. The following sections are chiefly pertinent to its appeal:

"Sec. 16. The board of review shall be in session from May first to May thirty-first, both inclusive, each year and shall hold as many meetings as are necessary to discharge its duties. On June first said board shall return all books, records and papers to the assessor except undisposed of protests and records pertaining thereto. If it has not completed its work, it may continue in session until August first. It shall adopt its own rules of procedure, elect its own chairman from its membership, and keep minutes of its meetings. The city assessor shall be clerk of said board. It may be reconvened by the state tax commission. All undisposed protests in its hands on August first shall be automatically overruled and returned to the assessor together with its other records. * * *

"Sec. 21. The assessment shall be completed not later than April thirtieth. If the city assessor makes any change in an assessment after it has been entered on the assessor's rolls, he shall note on said roll, together with the original assessment, the new assessment and the reason for the change, together with his signature and the date of the change. No changes shall

be made on the assessment rolls after May first except by order of the local board of review or by decree of court.

"Sec. 22. The board of review shall have the power: (1) to equalize assessments by raising or lowering the individual assessments of real property, including new buildings, personal property or moneys and credits made by the city assessor, (2) to add to the assessment rolls any taxable property which has been omitted by the assessor. It shall have the power to revalue and reassess real estate as provided in section seventy-one hundred twenty-nine and one tenth (7129.1), Code, 1939.

"It shall have all the powers conferred on boards of review in chapter three hundred forty-three (343), Code, 1939, where such powers do not conflict with the provisions of this act; and in event of such conflict, the provisions of this act shall prevail.

"Sec. 23. Any property owner or aggrieved taxpayer who is dissatisfied with his assessment may file a protest against such assessment with the local board of review on or after May first, to and including May twentieth, of the year of the assessment. Said protest shall be in writing and signed by the one protesting or by his duly authorized agent. Said protest must be confined to one or more of the following grounds: * * *.

"Sec. 24. All changes in assessments authorized by the local board of review, and reasons therefor, shall be entered in the minute book kept by said board and on the assessment roll. Said minute book shall be filed with the city assessor after the adjournment of the board of review and shall at all times be open to public inspection. In case the board increases any assessment or adds new property to the tax rolls, notice of such change shall be given as provided in section seventy-one hundred thirty-one (7131), Code, 1939."

The chapter provides that appeals shall be taken as provided in the pertinent sections of chapter 343 of the Code of 1939.

Section 16 specifies when the work of the Board of Review of the City of Des Moines shall be done. It shall be in session from and including May 1st to and including May 31st, of each year. On June 1st all papers, records, etc., not needed in disposing of undecided protests shall be returned to the

assessor. It may continue in session until August 1st, at which time undisposed of protests shall be automatically overruled and returned to the assessor with the records thereof. In section 22 is a statement of the powers of the board. Among them is the power to equalize assessments by raising or lowering individual assessments of real and personal property. Section 23 provides that any property owner or taxpayer who is dissatisfied with an assessment may, within the inclusive dates of May 1st and May 20th, sign and file with the board a written protest, specifying one or more of the grounds of complaint noted in the section.

It may be noted, and it is significant, that in the provisions specifying the various times or periods at or in which the duties of the board are to be performed, there are no commands that they shall not be performed at any other times. Section 16 provides that the board shall be in session in the discharge of its duties during the month of May. But the chapter 202 nowhere prohibits the performance of these duties at any other reasonable time not prejudicial to the rights of an owner or taxpayer. Any action of the board in performing such a duty is nowhere in the statute declared to be void and of no effect. One of the duties within the power of the board is to equalize assessments by raising or lowering individual assessments of real property. Section 22 does not expressly state when the power shall be exercised, but neither does it, or any other section, by expression or implication, rigidly limit the exercise of the power to the month of May. The provisions of the statute are directions only, and are not prohibitory mandates to the board or inflexible limitations upon the exercise of its powers or the performance of its duties. The provisions of sections 16 and 21 are directory and not mandatory. This court has uniformly so held, in like or similar situations, whenever the issue has been presented to it. Able presentations of the reasons supporting such decisions are stated in Hill v. Wolfe, 28 Iowa 577, 578–585, a certiorari proceeding; Easton v. Savery, 44 Iowa 654, 656–658; Taylor v. McFadden, 84 Iowa 262, 270, 50 N. W. 1070; Burlington Gas Light Co. v. City of Burlington, 101 Iowa 458, 461, 70 N. W. 628; Hubbell v. Polk County, 106 Iowa 618, 625, 76 N. W. 854; Munn v. School Township, 110 Iowa 652, 657, 658, 82 N. W. 323; Hawkeye Lbr. Co. v. Board of Review, 161 Iowa 504,

507–511, 143 N. W. 563; Woodbury County Taxpayers Conference v. Carr, 226 Iowa 204, 208, 209, 284 N. W. 122. See, also, Perrin v. Benson, 49 Iowa 325–328; Snell v. City of Fort Dodge, 45 Iowa 564, 568, 569.

The general rule is well expressed by a quotation from 23 Am. & Eng. Encyc. of Law, 458, in Hubbell v. Polk County, supra, 106 Iowa 618, 622, 76 N. W. 854, 856, to wit:

" 'Statutory prescriptions in regard to the time, form, and mode of proceeding by public functionaries are generally directory, as they are not of the essence of the thing to be done, but are given simply with a view to secure system, uniformity, and dispatch in the conduct of public business.' "

The thought is repeated in Hawkeye Lbr. Co. v. Board of Review, supra, 161 Iowa 504, 507, 143 N. W. 563, 565, as follows:

"Ordinarily statutes which are for the guidance of officers in the conduct of business devolving upon them, designed to secure order, system, and dispatch in the proceedings, and in the disregard of which the rights of persons interested cannot be injuriously affected, are held to be directory."

See supporting quotations therein from Cooley, Constitutional Limitations, 5th Ed., 92, and 2 Sutherland on Statutory Construction, section 611. See, to the same effect, a quotation in Easton v. Savery, supra, 44 Iowa 654, 655–657, of a statement of the principle by the Supreme Court of the United States in French v. Edwards, 13 Wall. 506, 20 L. Ed. 702. Quoting from Sutherland on Statutory Construction, sections 446–448, the court, in Hubbell v. Polk County, supra, 106 Iowa 618, 621, 76 N. W. 854, 856, said:

" 'Though a statute directs a thing to be done at a particular time, it does not necessarily follow that it may not be done afterwards. In other words, as the cases universally hold, a statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory, unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered as a limitation of the power of the officer.' "

. In Easton v. Savery, supra, 44 Iowa 654, 656, the court said:

"While the statute provides the levy shall be made at the September meeting, it is entirely silent as to whether it may be done at any other time or not. There are no negative, or words prohibiting the levy from being made either before or after the day fixed by the statute, nor is there any penalty attached for a failure to make the levy on the required day, or rendering it void if made at any other time."

Chapter 202 of the Forty-ninth General Assembly and chapter 343 of the 1939 Code are public-revenue statutes designed to provide funds for governmental use. They should be construed to effect that end, and the acts of the enforcing officers upheld unless clearly contrary to the statutory provisions and substantially prejudicial to the rights of the owner or taxpayer. As said by Justice Wright, in Hill v. Wolfe, supra, 28 Iowa 577, 582:

"Now it is in accord with the theory of every revenue law, that all property, unless exempt, shall bear its due and just proportion of the public burdens. Any construction which will relieve any part of the property in this State from liability to this just and most reasonable demand and burden should be avoided, if at all consistent with principle and established precedent."

The language of chapter 202 of the Forty-ninth General Assembly should be construed as have been other similar taxation statutes. The times and periods noted in sections 16 and 21 are general guides to the taxing officials to effect an expeditious transaction of their duties, so far as possible. Time is not of the essence of the provisions in such strict sense that a failure to perform any duty at the times or within the periods stated shall render performance within a reasonable time thereafter of no force and effect when it does not prejudice the complaining owner or taxpayer. This court has repeatedly so held, even though the failure to perform within the times fixed by the statute has been because of oversight or negligence upon the

part of the officials. No such fault on the part of the taxing officers is shown in this case. The delay in increasing the assessments until June 14th has not prejudiced the appellant. While the aggrieved owner or taxpayer is required, under section 23, to file his protest between the inclusive dates of May 1st and May 20th, if the original assessment is not raised, he is, of course, entitled to file a protest to the action of the board if it increases his assessment subsequent to May 31st, as was done in this case. He is also entitled to appeal to the district court, as provided by statute, from a denial of his protest. The appellant has taken advantage of the rights of protest and of appeal accorded it under the statute. It may prosecute its appeal and test the correctness of the assessments by a trial on the merits. Neither the statute nor the conduct of the taxing officials has deprived it of any of its rights under the equal-protection or due-process clauses of the State or Federal Constitutions.

Since the appellant had a right to protest the action of the board of June 14, 1943, in increasing the assessments, and to appeal from the board's order in refusing to accede to the protest, it was thereby afforded a plain, speedy, and adequate remedy. Certiorari is therefore not available to it. Western Grocer Co. v. Glenn, 226 Iowa 1374, 286 N. W. 441; State Appeal Board v. District Court, 225 Iowa 296, 280 N. W. 525; Ryan v. Hutchinson, 161 Iowa 575, 143 N. W. 433.

The recommendation of the assessor for an increase in the assessments was, in effect and in fact, a protest or complaint against the original assessment, which he was authorized to make under section 7135 of the 1939 Code. And the original assessments of appellant's property, so complained about, might well be regarded as ''undisposed of protests,'' under section 16 of chapter 202, to be determined by the board during the month of June. It is not necessary to pass upon this question, and we do not do so.

The order of the trial court in annulling the writ is—Affirmed.

MILLER, SMITH, GARFIELD, OLIVER, HALE, MANTZ, and WENNERSTRUM, JJ., concur.

MULRONEY, C. J., takes no part.