**GOOD DEVELOPMENT COMPANY,**
**Appellee,**

v.

**Fred HORNER, Polk County Treasurer, Jack E. Newell, Polk County Assessor, and Polk County, Appellants.**

**No. 59934.**

Supreme Court of Iowa.

Dec. 21, 1977.

Dan Johnston, Polk County Atty., John H. King, Asst. Polk County Atty., and J. R. McManus, Des Moines, for appellants.

Coppola, Coppola & Clark, Des Moines, for appellee.

Heard by MOORE, C. J., and LeGRAND, REES, UHLENHOPP and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal involves interpretation of a statute regarding notice by an assessor upon a change of a real property valuation for property tax purposes. Code 1973, § 441.23. Section 441.28 of the Code is not involved.

Plaintiff Good Development Company owned a tract of real estate in West Des Moines, Iowa, which had been valued for property taxation. Good constructed a building on the tract at a cost of $1.8 million.

Early in 1974, the assessor revalued the property as of January 1, 1974, for 1974 property tax purposes. The building was

then under construction. He increased the valuation so that the 1974 tax on the property was $56,187.41 greater than it would have been under the prior valuation. The assessor did not mail notice of the increased valuation until at least April 15, 1974. The assessment roll containing the revaluation and notice of right to protest bears the following: "APR 15 1974 ROLL MAILED". At the time, § 441.37 of the Code of 1973 provided a procedure before the board of review for protesting valuations.

In 1975, when the 1974 tax would be payable, Good sought an injunction to prevent collection of it. Later, after paying that tax, Good amended its claim and sought to recover the amount the tax was greater than it would have been but for the revaluation, with interest. The foundation of Good's claim was that the assessor did not notify it of the changed valuation by the first of April, 1974, as required by § 441.23 of the Code of 1973.

When the issues were made up in the action, Good moved for summary judgment. Good therefore had the burden of showing absence of any genuine issue of material fact. *Meyer v. Nottger,* 241 N.W.2d 911 (Iowa). The trial court held a hearing. The record of that hearing contains no assertion or showing by Good that the revaluation was excessive. The record does establish beyond question that the assessor did not by April first notify Good of the revaluation but it also so establishes that Good did not protest to the board of review the amount of the revaluation. The remainder of the record is not very clear. As between Good and its tenant of the property, W. M. & W., Inc., the tenant had to pay the taxes. John N. McRoberts, president of W. M. & W., Inc., apparently knew about the revaluation, as he brought it to the attention of William H. Fulton, who was Good's secretary, director, and attorney. Fulton nonetheless did nothing until he checked the revaluation the day he claimed was the last one for protests (the date in 1974 that the board of review adjourned sine die, however, was not shown).

The trial court granted Good summary judgment for the additional amount of tax resulting from the revaluation ($56,187.41), plus interest. The public officials and the county appealed.

The parties argue two issues: whether § 441.23 is mandatory or directory, and whether Good had to exhaust its administrative remedy by protest. We find no necessity to consider the second issue; if § 441.23 is mandatory, the additional amount of tax was illegal and Good can recover it, *Powers v. Bowman,* 53 Iowa 359, 5 N.W. 566; *Griswold Land & Credit Co. v. Calhoun County,* 198 Iowa 1240, 201 N.W. 11, while if the section is directory, Good cannot recover anyway. 72 Am.Jur.2d State & Local Taxation § 709 at 47. We turn, therefore, to consideration of the first issue.

I. Section 441.23 of the Code of 1966 and predecessor codes provided:

The assessor shall, at the time of making the assessment, inform the person assessed, in writing, of the valuation put upon his property, and notify him, if he feels aggrieved, to appear before the board of review and show why the assessment should be changed.

Under this section, the assessor "at the time of making the assessment" notified the taxpayer of the valuation and of the right to protest.

In 1971 the legislature amended the section by adding the following portion we have italicized:

*If there has been an increase or decrease in the valuation of the property, or upon the written request of the person assessed,* the assessor shall, at the time of making the assessment, inform [remainder the same]. 64 G.A. ch. 217, § 1. The explanation attached to this amendatory bill stated, "This bill changes the law so that county assessors are only required to send assessment rolls to a property owner if there has been an increase or decrease in the valuation of the property or upon the request of the property owner."

Under § 441.23 as thus amended, the assessor still notified the taxpayer "at the

time of making the assessment" of the valuation and right to protest—but only upon a change in valuation or written request.

The same 1971 act in § 2 amended § 441.26 of the Code. Section 2 dealt with the form of duplicate assessment rolls including a notice printed on the rolls relating to filing a protest before the board of review. Section 2 also provided, "Said duplicate roll shall be signed by the assessor, detached from the original and delivered to the person assessed if there has been an increase or decrease in the valuation of the property, or upon the written request of the person assessed."

In 1972 the legislature again amended § 441.23; it added a sentence at the end. 64 G.A. ch. 1095, § 1. As thus amended the section read as it did at the time of the revaluation in question in 1974. For clarity, we set out entire amended § 441.23 as it then appeared, with the 1972 amendment italicized by us:

If there has been an increase or decrease in the valuation of the property, or upon the written request of the person assessed, the assessor shall, at the time of making the assessment, inform the person assessed, in writing, of the valuation put upon his property, and notify him, if he feels aggrieved, to appear before the board of review and show why the assessment should be changed. *The owners of real property shall be notified not later than April first of any adjustment of the real property assessment.*

The explanation attached to the 1972 amendatory bill stated, "This bill provides that the assessor shall notify the owner of real property of any adjustment in the real property assessment by March 15." (The bill was amended during debate to change this day to April 1. Subsequently the legislature amended § 441.23 to change the date to April 15 in odd-numbered years and to June 30 in even-numbered years, when the board of review meets later. Code 1977, § 441.23. The events in this case took place when the statutory date was April 1.)

Reading original § 441.23 with the sections of the 1971 and 1972 acts, we conclude that in a case like the present one the assessor was to notify the taxpayer in writing of the changed real estate valuation, and of the right of protest, at the time of making the revaluation or thereafter not later than April first. The assessor here did not do so.

The question in the present case relates to the effect of the failure of this assessor to give timely notice of revaluation upon the validity of the additional amount of tax resulting from the increased valuation. The parties couch this question in terms of whether the notice provision of § 441.23 is directory or mandatory.

Arguments can be constructed on both sides of the question. The notice provision does more than regulate internal operations of the assessor's office; it affects the taxpayer. By April 1 it informs him of the amount of his new valuation and of his right to object if he is displeased.

On the other hand, the purpose of the notice is to enable the taxpayer to file a protest with the board of review. In 1974 boards of review regularly met from May 1 to May 31 but their actual adjournment might be later by virtue of § 441.33; and § 441.37 authorized written protests regularly to be filed from April 16 through May 5 but they could be filed later before the board of review finally adjourned if the inability to file them by May 5 resulted from the act of public officers themselves. *Younker Bros. v. Zirbel,* 234 Iowa 269, 12 N.W.2d 219. The tax authorities argue with some cogency that Good stands solely on the assessor's failure to give notice by April 1st, yet Good knew about the new building and learned about the increased valuation, and could have protested if it really objected to the amount of the revaluation. They contend that to hold the additional tax invalid in these circumstances would simply enable Good to skip one year's taxes and have a windfall of some $56,000 since Good has not shown the property was overvalued or that it could not have protested.

II. We turn to the authorities. They indicate that presence or absence of actual

prejudice to the taxpayer is an important consideration in determining whether an official's failure timely to follow the steps in a tax statute does or does not invalidate a tax. One of the earliest Iowa cases is *Hill v. Wolfe*, 28 Iowa 577. There a statute authorized supervisors to add omitted property to the tax rolls at their June meeting, but the supervisors did so in September following. This court said at page 580, "The rule is, that when a statute is merely directory, a thing therein required, omitted to be done at the proper time, may be allowed afterward. *Rex v. Loxdale*, 1 Burr. 455. If, however, a thing is prohibited, or if it is to be done at one time and prohibited at any other, such prohibition cannot, without judicial legislation, be disregarded." In view of the strong policy favoring taxation of all taxable property and omission of none, and since the tax books were not to be delivered to the treasurer until November anyway, the court held the time statute directory. Prejudice to the taxpayer did not appear.

This court held the time of the levy of a tax to be directory in *Easton v. Savery*, 44 Iowa 654. The supervisors should have made the levy in September but did so the next June. The court again emphasized the prejudice factor and stated on pages 656–658:

Is this statute directory or mandatory? If the former the levy is valid, if the latter void.

No rule applicable to all cases can, perhaps, be laid down. In the recent case of *French v. Edwards*, 13 Wall., 506 [80 U.S. 506, 20 L.Ed. 702], it is, however, said: "There are undoubtedly many statutory requisitions, intended for the guide of offices in the conduct of business devolved upon them, which do not limit their power, or render its exercise in disregard of the requisitions ineffectual. Such, generally, are requisitions designed to secure order, system and despatch in proceedings, and by a disregard of which rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by nega-

tive words importing that the act shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory." That this is a correct exposition of the law on this subject, we have no doubt.

There being no negative words in the statute, nor penalty attached if the levy was made on any other than the prescribed day, it becomes necessary to determine whether the defendants were in any manner prejudiced by the levy being made in June instead of September.

The only right the defendants had in connection with the levy was that they could appear before the board of supervisors, when acting as the board of equalization, at their meetings in June and next succeeding the general election in each and every year, and have the assessment of their property "corrected in such manner as to said board shall seem just and equitable." Rev. §§ 739, 740.

This law was amended so that they could only so appear before the board at their June session. Chap. 24, § 3, Acts of the extra session of the 8th General Assembly.

The board was in session in June at the time appointed by law, and the defendants could then have availed themselves of their right to have the assessment corrected. It was the only day this right could have been exercised.

If the levy had been made in September, the defendants had no right to be then present, and could have accomplished nothing if they had been. How, then, can it be said they were prejudiced by the levy being made at the time when, by law, the defendants had the right to appear before the board? . . .

It was the duty of defendants to pay their taxes, and it is no excuse that the officers did not strictly perform their duty, unless, as we have said, defendants

were prejudiced thereby. § 739 of the Revision, as amended by Chap. 24, § 3, of the Acts of the extra session of the 8th General Assembly, in substance provides that the board of supervisors at their June meeting shall add to the assessment any taxable property not included in the assessment as returned by the assessors. Where the supervisors omitted such duty at the June meeting and performed it at their September meeting, their action was held to be legal for the reason that the law under which they acted was directory. *Hill et al. v. Wolfe et al.*, 28 Iowa 577.

The court held that since prejudice did not appear, the tax was valid.

This court held an increased valuation made by a board of equalization to be invalid in *Henkle v. Town of Keota*, 68 Iowa 334, 27 N.W. 250. A statute required notice to the taxpayers *before* a valuation was raised by the board of equalization, rather than afterward as in cases like the present one. Notice was not given to several taxpayers until after the increase was made. Without discussing the directory-mandatory issue, this court held the increase illegal as to those taxpayers because the increase had been imposed without the prior notice. One taxpayer obtained a continuance from the board and appeared before it. The tax was held valid as to him for want of prejudice.

In 1898 this court interpreted the statute now before us as it appeared as § 1356 of the Code of 1897. *In re Kauffman's Estate*, 104 Iowa 639, 74 N.W. 8. The statute then read as it did in the Code of 1966, which we have quoted. The assessor did not give notice. This court nonetheless upheld the valuation saying regarding the statute at pages 640–641, 74 N.W. at 9, "This imposes a duty on the assessor. Its omission, however, will not invalidate the assessment. The owner is not prejudiced unless the valuation is excessive, or property is erroneously included." This holding was cited with approval in *Talley v. Brown*, 146 Iowa 360, 125 N.W. 248, and *McDonald v. Clarke County*, 196 Iowa 646, 195 N.W. 189. The basis for the latter decision, however, appears to be

that the taxpayer was not entitled to equitable relief because of her own conduct. See also *Modular Communities, Inc. v. McKnight*, 550 P.2d 866 (Colo.) (taxpayer must show overvaluation and deprived of hearing); *Continental Oil Co. v. Board of County Comm'rs of El Paso County*, 498 P.2d 974 (Colo.App.); *Spalding v. Price*, 210 Kan. 337, 502 P.2d 713; *Parker v. Krick*, 433 Pa. 514, 252 A.2d 648.

In 1913 this court pointed out that negative words in a statute do not necessarily make it mandatory. *Hawkeye Lumber Co. v. Board of Review of Oskaloosa*, 161 Iowa 504, 509, 143 N.W. 563, 565: "While the language of the statute under consideration is negative in form—'not later than the first of May'—it imports no more than had it read, 'within the month of May,' and numerous authorities may be found holding that a statute requiring that the particular act be done on or before a day mentioned, or within a designated number of days after a specified event, is to be regarded as directory." The court cited, among other authorities, *Taylor v. McFadden*, 84 Iowa 262, 270, 50 N.W. 1070, 1071 ("on or before the first Monday of September" held directory).

This court turned the decision on lack of prejudice in *Younker Bros. v. Zirbel*, supra, 234 Iowa 269, 12 N.W.2d 219. There the board of review increased the assessment after the statutory date for doing so. The court held that the taxpayer had an enlarged time to protest since he could not do so within the regular time because of the public officers' own acts. See also *Iowa National Industrial Loan Co. v. Iowa State Dep't of Revenue*, 224 N.W.2d 437, 441 (Iowa) (quoting 1A Sutherland, Statutory Construction (Sands 4th Ed.) § 25.04 at 301: " 'It can be stated as a general proposition that, as regards the question of mandatory or directory operation, the courts will apply that construction which best carrier into effect the purposes of the statute under consideration.' "); Anno. 151 A.L.R. 248; 72 Am.Jur.2d State & Local Taxation § 709 at 47–48; 84 C.J.S. Taxation § 420 at 818.

The Iowa Attorney General has ruled that noncompliance with the notice provision of § 441.23 does not invalidate a tax in the absence of actual prejudice, citing *In re Kauffman's Estate,* supra, 104 Iowa 639, 74 N.W. 8. 1940 Rep. Iowa Atty.Gen. 89 (no refund of tax paid); See 1964 Rep. Iowa Atty.Gen. 432, 434 ("The taxpayer should be informed of any change in valuation of his property, although the foregoing requirements of the statute are directory, rather than mandatory and a breach of this requirement does not render an assessment void, in the absence of actual prejudice or a tax which has been erroneously or illegally exacted or paid."); Op. Iowa Atty.Gen., May 12, 1977.

From these authorities we deduce the following principle with respect to § 441.23. Standing alone, failure of an assessor to give timely notice under the section will not invalidate a tax. But failure of an assessor to give timely notice coupled with resulting actual prejudice to the taxpayer will invalidate the additional amount of tax brought about by an increased amount of valuation. In order to establish actual prejudice caused by the assessor's tardy notice, a taxpayer must show that (a) the assessor overvalued the property (since otherwise the taxpayer is not hurt) and (b) as a result of the delay in notification the taxpayer was unable to file a protest with the board of review by the time the board finally adjourned for the year (since the purpose of § 441.23 is to enable the taxpayer to protest)—for example, as where the taxpayer establishes he was unaware until after the board finally adjourned that taxpayers have a right to protest or that the assessor had raised the valuation.

III. The district court disposed of the present case on Good's motion for summary judgment. Under that motion, Good established beyond question that the assessor did not give notice by the first of April, 1974. But Good also had to show no issue of fact existed that it sustained actual prejudice as a result—that the assessor overvalued the property and that Good was unable to file a protest prior to final adjournment of the board of review. Good made no showing at all that the assessor overvalued the property. For aught that appears, Good paid the right amount of tax—its proportionate share as a taxpayer. Moreover, Good did not establish beyond an issue of fact that it was unable to protest by the time the board of review finally adjourned; whether it adduced even substantial proof of that element is doubtful.

The district court should have overruled the motion for summary judgment.

REVERSED.