# APRIL TERM, 1902.

## PINGREE *v.* STATE COURT OF MEDIATION AND ARBITRATION.[1]

1. COURT OF MEDIATION—SUBMISSION TO ARBITRATION.

    A submission to the court of mediation and arbitration, reciting that, "being unable to agree on the prices of the following work, we request an arbitration of the same," followed by a list of certain kinds of work in the manufacture of shoes, is sufficiently broad to justify the court in saying the compensation should be by the piece, instead of by the day or week.

2. SAME—EXTENT OF AUTHORITY.

    Where the proofs show that both the employer and workmen understand that the prices fixed by the court shall take effect at a date prior to the date of submission, the court may fix the time, though the submission contains nothing on that subject.

3. SAME—DURATION OF PRICES.

    Where the articles of submission fix the time during which the prices for work shall remain in force, the court need not name the time in its decision.

4. SAME—TIME OF RENDERING DECISION.

    Section 563, 1 Comp. Laws, requiring the court to render its decision within 10 days after the matter has been fully heard, is directory merely.

*Certiorari* by Frank C. Pingree, John B. Howarth, and Hazen S. Pingree, copartners as Pingree & Smith, to review an award of the State court of mediation and arbitration. Submitted October 9, 1901. (Docket No. 19.) Affirmed April 8, 1902.

*Bowen, Douglas & Whiting*, for relators.

*George F. Monaghan*, for respondent.

[1] Rehearing denied June 11, 1902.

MOORE, J.   This case is brought here upon a writ of *certiorari* to review the proceedings of the State court of mediation and arbitration in a matter submitted to that court by the firm of Pingree & Smith and some of that firm's employés.   During the summer of 1899 serious differences arose as to the question of wages between the firm and its employés, which resulted in strikes and lock-outs.'   It was finally agreed to submit the differences to the respondent, and in the meantime the employés returned to their work.   The submission was a written instrument, in words and figures as follows:

"DETROIT, Dec. 16, 1899.

"STATE BOARD OF ARBITRATION:

"*Gentlemen :*   Being unable to agree on prices of the following work, we hereby jointly request an arbitration of same by your honorable board, agreeing to abide by your decision.   Prices to remain in force until May 1st, 1900.

"1st.  For pulling over uppers and operating consolidated lasting machine on women's, misses', and children's McKay sewed work.

"2nd.  For pulling over uppers on women's welt work, and operating the ideal lasting machine on same.

"3rd.  For turning and second lasting women's turned' work by new method now in use in our factory, styled 'string work.'

"4th.  For trimming spring heels.

"5th.  For automatic leveling.

"6th.  For cleaning, ironing, and dressing.

"7th.  For trimming bead-edge turns.

"FRANK C. PINGREE,
"For Pingree and Smith.
"TIMOTHY O'CONNOR,
"ERNEST A. ALLEN,
"For Employés.

"In signing this agreement, we, the employés, do not relinquish any rights that we may have in any other matters not specified therein."

March 9, 1900, the questions in dispute had been fully heard.   March 31, 1900, the court rendered its decision, and served a copy on the counsel for the parties.   It did '

not, however, file a copy with the clerk of the county of Wayne until April 19, 1900.

Pingree & Smith insist that, as a matter of law, the finding of the State court of mediation and arbitration was erroneous, because said court did not confine itself to the terms of said written submission. It is said by counsel:

" In the case at bar the award departs from the submission, in that the arbitrators, in fixing prices for the work mentioned in the third, fourth, fifth, and sixth counts or paragraphs of said submission, treated that work as if it were piece-work, and fixed piece-work prices; thus, in effect, calling upon Pingree & Smith to change their method of doing the work embraced in those counts."

"The decision of this court of mediation and arbitration makes a new contract between employers and employés, and substitutes it for the one existing at the time the submission was made. Without any authority under the submission or elsewhere so to do, the court of arbitration said to the firm that the men who were engaged to work and who were working by the day or week must be considered or treated as if they had been engaged to work and were working by the piece. To permit the decision to stand would be to place a new and heavier burden upon the employers without their assent, and without any knowledge on their part that an attempt to do this was to be made."

It is, of course, well settled that when arbitrators go beyond the submission, they exceed their jurisdiction, and the award may be set aside. The record discloses that, when this submission was made, some of the men claimed, under the system adopted by their employers, that, where they had formerly been able to earn $12 to $15 a week, they were able to earn less than $10 a week. It also shows that an attempt had been made to have the prices fixed by the piece, instead of having the work done by the day or week, and that upon the hearing, without objection, testimony was given upon both sides, not only by local experts, but by witnesses from a distance, in relation to the scale of wages by the piece as well as by the day.

The terms of the submission were doubtless prepared in view of the actual situation and the claims of the respective parties, and, we think, are sufficiently broad to justify the court in saying the compensation should be by the piece, instead of by the day or week.

In its decision the court fixed a time when the scale of prices should take effect. Counsel say of this:

"The court of mediation and arbitration departed from the submission, also, when it decided that this decision, under the agreement of submission to this court, is 'to take effect from the 26th day of July, A. D. 1899, and be paid from that date.' An examination of the submission will show that the court is not asked or expected to fix the date from which the prices it may determine shall be paid. It might be said that the prices are to be paid from the date of the submission, December 16, 1899,—five months later than the date set by the court of mediation and arbitration. It seems to us that it might just as reasonably be said that these prices were to be paid from the date of the award. But, however this may be, there is nothing in the submission which authorizes the court of mediation and arbitration to fix a time antedating the submission itself."

It is difficult to justify this claim in view of what is disclosed by the record. It is shown that on the 26th of July, 1899, a machine was put in the factory upon which the work was done which is mentioned in count 1 of the submission. Upon the trial Mr. Oakman was giving testimony in relation to the prices which should be paid to the employés, when the following occurred:

"Q. At the time this matter was submitted to arbitration for this board to decide on what prices should be paid, that price would then be paid and operate back to the time the work began?

"A. Yes; but this shoe we are talking about now was not made this way, and consequently could not be put down until possibly a month or so after.

"The Court: Is the witness referring to a past arbitration?

"Q. No, to the time this consolidated machine came over there, and Mr. Pingree said he would pay them a cer-

tain amount, and the amount due should be in abeyance. I ask the witness the date.

"*Mr. Whiting:* July 26, 1899.

"*Mr. Pingree:* I don't think there is any question in regard to that, Mr. Oakman, and the men all fully understand that whatever price is set today is to go back to the time the machine was put in."

Another witness was also testifying that he was being paid four cents a pair for lasting shoes, when counsel stated, "We do not claim we have paid anybody in full, because we expected some day it would be settled by this court." In view of these statements made during the progress of the trial, we do not think the relators can be heard to say the court erred in fixing the date it did when its decision should take effect.

It is also said the court erred in failing to fix a limit to the time when the prices fixed by them should be in effect. As the articles of submission themselves fixed the limit, we cannot see what would be accomplished by naming the time in the decision.

It is said:

"The State court of mediation and arbitration was acting under the terms of the act under which it was created, and it must therefore act, if it act at all, in the manner pointed out by the statute. Section 563, 1 Comp. Laws, says:

"'After the matter has been fully heard, the said board, or a majority of its members, shall, within ten days, render a decision thereon in writing, signed by them or a majority of them, stating such details as will clearly show the nature of the decision and the points disposed of by them. The decision shall be in triplicate, one copy of which shall be filed by the clerk of the court in the clerk's office of the county where the controversy arose, and one copy shall be served on each of the parties to the controversy.'

"The matter had been fully heard by and on March 9, 1900, but the decision was not rendered until March 31, 1900, and was not filed in the clerk's office of Wayne county, where the controversy arose, until April 19, 1900. As there was no waiver of this requirement of the statute, it was obligatory upon the court to render its decision

within the time limited, and its failure to do so rendered its award void."

In the case of *Renaud* v. *State Court of Mediation and Arbitration*, 124 Mich. 648 (83 N. W. 620), the constitutionality of the statute creating this court was attacked. It was held the statute was constitutional; that it called into existence a court contemplated by article 6, § 23, of the Constitution. The respondent then being a court, the case of *Rawson* v. *Parsons*, 6 Mich. 405, is germane to the subject under discussion. Section 10260, 3 Comp. Laws, provides, among other things:

"Upon the trial of a question of fact by the court without a jury, the decision of the court shall be given on or before the first day of the term succeeding that in which the cause was submitted."

In *Rawson* v. *Parsons*, 6 Mich. 405, it was said:

"We are all of opinion that this provision, as relates to the time within which the decision shall be given and filed, is directory merely. It imposes a duty upon the judge; but, as the parties have no control over his action, it would be a harsh construction which should deprive them of the fruits of the litigation because the judge fails to decide by a particular day."

No case could exemplify such a hardship more than the one at bar. The testimony taken makes more than 500 pages of printed record. Several complicated scales of prices were introduced, and, if the testimony was to be intelligently considered and passed upon, some time would necessarily elapse. What little delay there was is not to be charged against the parties to the litigation, if to anybody; and the law ought not to be given such a construction as is contended for by the relators.

The other questions raised by counsel have been considered, but we do not deem it necessary to discuss them.

The case is affirmed.

Montgomery, J., concurred with Moore, J.

Hooker, C. J. This cause is before us upon *certiorari*.

It involves an award made by the State court of mediation and arbitration in a cause between Frank C. Pingree *et al.*, manufacturers, and some of their employés, whose names do not appear.   The court referred to attempted to settle some differences between the employers and employés, and after a hearing they made an award fixing rates of compensation, etc.   Pingree claims that the award is invalid for several reasons, among them the following, viz.:   That the board attempted to adjudicate matters not submitted, and therein "exceeded their jurisdiction;" that it did not make its award within the period of 10 days, prescribed by statute; that it erred in receiving hearsay evidence upon the trial.

This proceeding arose under chapter 30 of the Compiled Laws, which is entitled:

"An act to provide for the amicable adjustment of grievances and disputes that may arise between employers and employés, and to authorize the creation of a State court of mediation and arbitration."

The act is a recent one, and is apparently designed to afford a means of adjusting matters relating to wages, hours of labor, and perhaps other matters entering into the relation of employer and employés.   The act has been before us but once, and that was in this same cause.   On that occasion the present relators attacked the law upon the ground that it was unconstitutional.   The law was sustained under article 6, § 23, of the Constitution, as a court of conciliation, and it was held that such court has not the power to grant rehearings.

The term "court of conciliation," as used in the Constitution, has not been judicially defined.   If it should be held to mean a tribunal which might interest itself in controversies with a view to inducing the parties to compromise, or otherwise harmonize and adjust their differences, without power to bind the parties by its own opinions or conclusions, it would certainly be a court of conciliation; and such we understand to be the limit of the power of some such courts.   Whether the term used in the Consti-

tution can be properly held to apply to a court which has power to make a binding and enforceable judgment may be a doubtful question. That question is not here, because the law contains no provision indicating such an intention, unless we are to say that the provision for the making and filing an award is tantamount to authorizing it to render judgments. If that view should be taken, and we should hold that *certiorari* lies to review and correct such judgments, it is obvious that the court of conciliation would not differ materially from other courts in existence in this State under the other provisions of article 6 of the Constitution. See section 1, which names the courts in which the judicial power shall be vested. Courts of conciliation are not mentioned in section 1, and there is force in the claim that they do not fall within the definition usually applied to courts, and that they were intended to provide an entirely different method of settlement of disputes, viz., conciliation of the parties, and settlement of controversies, as contradistinguished from the establishment of legal rights by force of judicial trials. If they are thus distinguishable, the decision to be made and filed under this law might have no judicial force, and there would be no occasion to review it. If this view is not taken, and it shall be said that a tribunal may be erected to act as arbitrators, and that it can be said to be within the constitutional term "courts of conciliation," may we hold that it is within the power of the legislature to authorize such tribunal to go further than to make an award in the ordinary acceptation of the term, which has a settled legal meaning, if in fact it may go so far? We may not discuss the former of these questions, for there has been no attempt to do more in this act than to erect a tribunal which should perform the functions of arbitrators by making an award. Its award is made, and, under the provisions of the act, must be filed with the clerk of the county. The question then arises whether, being a court of conciliation, its award may be enforced, and, if so, how.

As no one is here trying to enforce this award, we need

not consider whether it is enforceable or not; but, assuming that it is, for the purpose of the case, we must conclude that it is to be enforced in one of two ways: (1) By action, or by way of defense in an action, or suit in equity to set aside the award in a proper case. 3 Enc. Pl. & Prac. 155. (2) Under our statute (3 Comp. Laws, chap. 302), if that is applicable. In either case the proceeding is to be taken in a court of original jurisdiction. See Morse, Arb. 574. An award at common law is usually enforced by the appropriate action, or it may be by suit to compel specific performance. Id. 610; 3 Enc. Pl. & Prac. 154. On the other hand, it may be used by way of defense; and, where proceedings have been taken under a statute which makes the award returnable into *court*, a motion may be made in that court to vacate it. Morse, Arb. 611, 613, 614. To hold that the intervention of this court may be invoked to supervise, control, and direct this court of mediation and arbitration, to review its proceedings, and reverse its awards because it has not followed the technical methods and rules applied in ordinary judicial proceedings, to deprive it of its summary influence or power—if "power" is an appropriate term to use—by dragging through the courts proceedings which the law attempts to have disposed of in 10 days, will be, in my opinion, to thwart the purpose of the act, and turn the court of conciliation or arbitration into the ordinary tribunal, with its attendant evils of technicality, delay, and expense to litigants.

We have purposely left many questions pertaining to this statute undecided, because they have not been discussed by counsel, and it is unnecessary to pass upon them. The writ was improvidently issued, because it is not an appropriate or proper remedy in the premises. It should, therefore, be dismissed, with costs.

LONG and GRANT, JJ., did not sit.