**BROTHERHOOD OF SLEEPING CAR PORTERS v. PULLMAN CO.**

No. 10600.

United States Court of Appeals
Seventh Circuit.

Nov. 5, 1952.

On Petition to Tax Costs Dec. 9, 1952.

Erwin W. Roemer, Herbert S. Anderson, Chicago, Ill., Donald S. Dugan, James A. Velde, Laurence A. Carton, Chicago, Ill., of counsel, for appellant.

Milton P. Webster, Jr., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and FINNEGAN, Circuit Judges.

KERNER, Circuit Judge.

This is an action brought by plaintiff for and on behalf of Henry C. Bernard, under § 3 of the Railway Labor Act, 45 U.S.C.A. § 153, to enforce an order of the National Railroad Adjustment Board directing defendant to return Bernard to his former position as a Pullman porter. The trial judge held that Bernard's discharge was invalid by reason of violations of a collective bargaining agreement, and entered judgment in favor of plaintiff directing defendant to reinstate Bernard in his employment, and ordering defendant to pay him $4,224 as compensation for lost time and $750 as his attorney's fee. To reverse this judgment defendant appealed.

In its complaint plaintiff alleged that on June 1, 1941, an agreement was entered into between defendant and the porters in the service of defendant, setting forth rules to govern working conditions and the rights of the porters; that on September 21, 1942, Bernard was employed by defendant as a porter and served until September 2, 1947, when he was discharged, in violation of the agreement; that his discharge constituted a dispute growing out of a grievance, within the meaning of § 3 First (i) of the Railway Labor Act; and that defendant's chief operating officer, designated to handle the dispute, sustained the discharge on October 10, 1947.

The complaint also alleged that on January 20, 1948, on plaintiff's petition, the dispute, pursuant to the Act, was referred to a division of the Railway Board in a proceeding known as a "submission." The petition stated that his discharge was illegal and in violation of the terms of the agreement, and on January 4, 1949, that division of the Board entered an award sustaining his claim, and directed defendant to make the award effective.

The case was tried before the court without a jury. The evidence was in large part documentary, and included the transcript of the hearing before defendant's district superintendent and numerous letters relating to the hearing, as well as the decision of the Board, together with the testimony of a witness that he had made a study of cases against Pullman porters prior to April, 1947, which showed that in 18 cases in which the porters had been represented by the Brotherhood, decisions had been rendered more than 15 days after hearing. Rule 50 of the agreement provided that an employee shall not be "discharged without a hearing" but may be held out of service pending investigation; that the hearing must be held within ten days after notice to the employee, and that "decision shall be rendered in writing within fifteen (15) days after the hearing is completed."

The record disclosed that on September 14, 1946, T. C. Olney, defendant's district superintendent, wrote Bernard that a hearing would be granted him on September 18 on a charge that he was "temperamentally unfitted for service as a Pullman porter," as was evidenced by the fact that on September 8 he had "twice shot and seriously wounded a man" on the city streets of New Orleans. The date of the hearing was postponed for many months at plaintiff's re-

quest, as shown in many letters between Olney and Bernard's representatives. On January 4, 1947, Olney wrote to G. C. Garran, chairman of plaintiff's Local Grievance Committee, that he was rescheduling the hearing for January 10, and Garran informed Olney that plaintiff's representatives would be ready for the hearing.

The hearing began on January 10 and extended into January 11. Bernard was represented by plaintiff's grievance committee, which included Garran. Defendant's representatives included Olney and R. C. McCarthy. At the hearing McCarthy stated that the defendant's district office was informed through newspaper items that Bernard had been booked for attempted murder; that defendant's inspector had made an investigation and his report revealed that on September 8, 1946, while in New Orleans between assignments as a Pullman porter, Bernard shot one Elzy twice in the back, and that when the police arrived Bernard was placed under arrest and charged with attempted murder, but was released on bond.

At the hearing on January 10, after introducing the inspector's report and the written statements attached thereto, McCarthy stated that defendant was prepared to receive evidence on behalf of Bernard. V. O. Duncan of plaintiff's grievance committee then stated that the employee's representatives wanted a continuance in order to consult the lawyer representing Bernard on the criminal charge, and the hearing was adjourned to January 11. At that hearing Bernard's representatives stated that no evidence would be produced on his behalf. Duncan explained that Bernard's lawyer had told him "not to make anything public here which might get into the hands of the wrong individuals," that Bernard would not "dare divulge" evidence that would be important in his defense in court.

At the conclusion of the hearing on January 11 Olney announced that the hearing was "closed" and that a decision would be rendered within the 15-day period provided for by Rule 50 of the agreement between the defendant and its porters. However, on January 23, Olney wrote to Garran, with a copy to Bernard: "This is to advise that there will be a delay in rendering a decision in the case." No reply to this letter was received. February 7, 1947, Olney wrote to Bernard and stated that due to the pending police charge against him it was obvious that Bernard was in no position to tell his entire story, and that in the interest of equity and because he thought it only fair to hold the hearing open until such time as Bernard was in a position fully to testify regarding his actions on September 8, 1946, he was rescinding his action in closing the hearing, and that the hearing would be continued to "as soon as you are free to testify fully." Bernard made no reply to this letter.

On May 9, 1947, in the Criminal District Court for the Parish of Orleans, Bernard was tried and found guilty, and on June 26, 1947, was sentenced to one year in the parish prison, but the sentence was suspended during his good behavior. Thereafter, on July 17, 1947, Olney wrote to Bernard, with a copy to Garran, referring to Olney's letter of February 7. He stated that since Bernard's trial had been held and he had been given a one year's suspended sentence, he was no longer faced with a pending court trial and should be in a position, without prejudice to himself, to give full testimony regarding his actions, and since the first opportunity of Bernard's representatives to be present was August 6, 7, or 8, he was reconvening the hearing on August 7. On that day one T. D. McNeal, the Brotherhood's field organizer, wrote Olney a letter in which he stated that the hearing had been "officially closed" on January 11, and that defendant had no right to reconvene a hearing; that under Rule 50 a decision should have been rendered "not later than January 21"; that plaintiff had not agreed to any extension of time and that "the employes will not appear today to take part in what we think is deliberate sabotage of our agreement."

Olney received McNeal's letter on August 8 and replied on the same day by a letter to Bernard, with copies to McNeal and Garran. Olney recited the sending of his letters after the hearing, with copies to the union representatives. He stated that no exception had ever been taken by Bernard's

representatives to his letter of February 7, that on July 29 Garran had stated his intention of appearing with Bernard at the hearing reconvened for August 7, and that fifteen minutes before the hearing McNeal had informed him by telephone that he did not intend to appear or to permit Bernard to appear at the reconvened hearing. Olney then stated that he was "rescheduling the reconvened hearing" for August 18, and that if Bernard failed to appear or to be represented he would be compelled to take action on the charge on the basis of the evidence in his possession. Bernard did not appear on the rescheduled date. Thereupon Olney concluded that he had no alternative other than to take action on the basis of the evidence, and since that evidence fully substantiated the charge that Bernard was temperamentally unfit for service as a Pullman porter, he ordered his discharge. The Brotherhood appealed, and on October 10, 1947, defendant's assistant vice-president sustained the discharge.

Thereafter a statement of claim was filed with the Board, Third Division, which is granted jurisdiction over such a dispute by § 3 First (h) of the Act. The claim alleged that Bernard's discharge was "unfair, unjust and illegal" and in violation of the rules and regulations of the agreement. The Third Division of the Board sustained Bernard's claim. Its finding was that "the charge was too indefinite to justify the Carrier's action in dismissing the claimant."

In the District Court, after hearing all the evidence, the trial judge stated that he had no doubt that Bernard's conduct did "justify his separation from the service of the Pullman Company, whether they describe him as a temperamentally unfit man for service or how else they describe him." But he concluded that "since the * * * agreement * * * prescribes in detail the procedure to be followed * * * the discharge could only be accomplished in accordance with the terms of that agreement. The right to hold open for an indefinite period, or reconvene, a hearing once closed does not exist under the agreement between defendant and its porters. Rule 50 requires that a decision be rendered within 15 days after a hearing is completed, and Olney's

statement at the conclusion of the hearing was an admission that the defendant so understood the rule. It is apparent that the purpose of the rule is to insure that once an employee has a hearing on a grievance he be apprised of his employer's decision thereon without unreasonable delay. By its attempt to 'hold open' and later 'reconvene' the hearing defendant violated the agreement, and by reason thereof porter Bernard's discharge * * * was unlawful."

The only question we are asked to decide is whether, under the facts, the court erred in holding that Bernard's discharge was invalid because the decision discharging him was not rendered within 15 days after January 11, 1947.

Defendant contends that Olney's announcement on January 11 that the hearing was closed and his announcement of January 23 that there would be a delay in rendering a decision, and the subsequent reopening and reconvening of the hearing, and the discharge on September 2 did not render the discharge invalid.

█ We observe that while Rule 50 provides that an employee "shall not be discharged * * * without a hearing" there is no such negative or prohibitive language for rendering a decision according to the 15-day rule, nor did it provide that "time was of the essence," hence non-observance of the time limitation without more, did not invalidate the decision. We find support for this conclusion in what was said in International Brotherhood of Teamsters v. Shapiro, 138 Conn. 57, 82 A.2d 345, 350. In that case the agreement provided that the grievances should be referred to the State Board of Mediation, which was established by a statute providing that "After a matter has been fully heard, the (board) * * * shall, within * * * fifteen days, render a decision thereon in writing". An award was made more than a month after the hearing. It was contended the award was invalid because it was not made within the time limitation set by the statute. The court rejected the contention and on page 350 of 82 A.2d said: "In determining whether a statute is mandatory or merely directory, the most satisfactory and conclusive test is whether the prescribed mode

of action is of the essence of the thing to be accomplished, or * * * whether it relates to matter of substance or to matter of convenience. * * * Viewed in the light of this test, the provision of § 608a [the statute there involved] is directory. It relates to procedure. The language is affirmative in character and such as would naturally be used to secure prompt dispatch of the arbitration. The statute contains nothing which expressly invalidates a belated award or which inferentially makes compliance therewith a condition precedent. The provision is not of the essence of the thing to be accomplished."

We might well conclude our opinion at this point, but plaintiff says that even if time is not of the essence, Bernard's rights must be determined in accordance with the law of contracts, and that defendant's failure to render the decision within 15 days vitiated the decision. Defendant, however, insists that the 15-day limit is a procedural feature of the grievance machinery and may be waived, Pingree v. State Court of Mediation, 130 Mich. 229, 89 N.W. 943, " 'Even though time is of the essence' ", Hayes Mfg. Corp. v. McCauley, 6 Cir., 140 F.2d 187, 190, and Chicago Sugar Co. v. American Sugar Refining Co., 7 Cir., 176 F.2d 1, and since the undisputed evidence shows that the action of the hearing officer was not objected to, it was acquiesced in and waived.

We think we need not cite any authorities for the well-established proposition that even if time is of the essence it may be waived, either by consent or the conduct of the parties, and that where a specific time is fixed for the performance of some act and it is not performed at that specific time, and the parties proceed with and perform the act after the time fixed, fair dealing compels the conclusion that the time provision of the agreement is waived.

Of course, the question of waiver is generally one of fact, Universal Gas Co. v. Central Illinois Public Service Co., 7 Cir., 102 F.2d 164; but whether or not the facts amount to a waiver is a matter of law to be determined by the court. Home Indemnity Co. v. Allen, 7 Cir., 190 F.2d 490. Here the undisputed proof is that on January 23, 1947, Olney wrote plaintiff's representative that there would be a delay in rendering the decision. A prompt reply objecting to the delay would have enabled the hearing officer to render his decision within the 15 days provided for by the agreement, but plaintiff made no reply, and thereafter when on February 7 Olney wrote advising plaintiff that he had rescinded his action in closing the hearing and was continuing the case so as to enable Bernard to testify after his criminal case had been heard, no objection was made to the reopening and continuance. In addition, when on July 17 the hearing officer reset the case for August 7, plaintiff made no reply until August 7, although on July 29 plaintiff's representative stated his intention to appear with Bernard at the hearing on August 7.

In this state of the record, plaintiff's course of conduct, as a matter of law, clearly constituted a waiver of the time provision.

For the reasons stated the judgment of the District Court must be reversed. It is so ordered.

### On Petition to Tax Costs.

After reversal of the judgment in this cause, our mandate to the District Court contained the usual provision for taxing costs against appellee in accordance with our Rule 24. Now both parties have joined in calling our attention to the following provision of § 3, subd. 1(p) of the Railway Labor Act under which the proceeding was brought, 45 U.S.C.A. § 153, subd. 1(p):

" * * * the petitioner [who under this paragraph is always the employee or someone acting in his behalf] shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States."

Asserting that this section makes any costs incurred during the proceedings payable out of the funds of the United States, appellant has submitted its memorandum of costs as follows:

Filing fee, District Court, on notice for appeal (28 U.S.C.A. § 1917)    $  5 00
Reporter's fee for transcript (28

U.S.C.A. § 1920)           39.15
Docket fee, Court of Appeals (28 U.S.C.A. § 1913; Rules of Practice, 7th Circuit, 24)      25.00
Cost of printing record (28 U.S.C.A. § 1913; Rules of Practice, 14(k)         311.60

$380.75

It asks that we enter an appropriate order directing that the Director of the Administrative Office of the United States Courts pay these costs.

We have found no cases construing this particular section, and the hearings before the Senate and House committees and the committee reports and Congressional debate at the time of its enactment made no reference to it.

While the parties are agreed that the meaning is clear, we are not persuaded that Congress intended to impose the burden of the carrier's costs of appeal on the Government. Nor are we persuaded that the language requires such construction. We think it may fairly be construed to mean only that petitioner shall not be liable for costs at any stage of the proceedings, but if such costs accrue to him on *his* appeal, they must be paid by the United States. This does not mean that the carrier is to be reimbursed for its costs on *its* appeal resulting in a favorable decision.

The mandate must therefore provide that the judgment is reversed without costs. It is so ordered.