**MAQUOKETA VALLEY COMMUNITY SCHOOL DISTRICT, Appellant,**

v.

**MAQUOKETA VALLEY EDUCATION ASSOCIATION, Appellee.**

No. 61337.

Supreme Court of Iowa.

March 21, 1979.

Rehearing Denied April 19, 1979.

Joseph E. Day and Mark H. Rettig of Hines, Pence, Day & Powers, Cedar Rapids, for appellant.

Charles E. Gribble of Dreher, Wilson, Adams & Jensen, Des Moines, for appellee.

Richard C. Turner, Atty. Gen., Marie Condon, and Hugh J. Perry, Asst. Attys. Gen., Des Moines, for amicus curiae Public Employment Relations Bd.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, McGIVERIN and LARSON, JJ.

REYNOLDSON, Chief Justice.

Maquoketa Valley Community School District appeals from a district court judgment validating a collective bargaining arbitration decision rendered pursuant to section 20.22, The Code 1975. We reverse and remand.

Plaintiff District is a public employer within the meaning of the Public Employment Relations Act. Defendant Maquoketa Valley Education Association is the employee organization representing the District's teachers, guidance counselors and librarians.

In September, 1975, the District and Association began negotiations to reach their first collective bargaining agreement. By the end of 1975 the parties had reached agreement on all subjects except salary and supplemental pay. Mediation was unsuccessful. January 31, 1976, the parties went to fact-finding. The Association accepted but the District rejected the fact-finder's findings and recommendations. February 24, the District filed a request with the Public Employment Relations Board (PERB) for binding arbitration.

In compliance with section 20.22 each party filed with PERB its final offer on the impasse items, a copy of the draft of the agreement to the extent agreement was reached, and the name of its arbitrator. The selected arbitrators, Edward Beatty for the District and Patrick Connolly for the Association, appointed Martin E. Conway of Minneapolis, Minnesota, as the third arbitrator and panel chairman.

The panel's first meeting was held March 18. Each party presented evidence and arguments supporting its final offer. During this hearing the parties agreed on supplemental pay and withdrew that subject from the panel's consideration.

Sometime in April but indisputably more than fifteen days after the panel's first meeting, Conway sent the other arbitrators and PERB an "Award of Neutral Chairman." Association arbitrator Connolly by subsequent letter "voted in favor" of Conway's award.

By this action the District sought a declaratory judgment that the arbitration award was invalid because it incorrectly defined "impasse item" and because the decision was rendered more than fifteen days after the panel's first meeting. The District further alleged the panel took no vote and failed to provide the parties with written notice and explanation of its decision.

The Association, by answer and counterclaim, denied the District's contentions and sought enforcement of the agreement as finalized by the arbitration decision.

Each party filed a summary judgment motion supported by affidavits. Trial court sustained the Association's motion, overruled the District's and entered judgment for the Association. Although minor factual disputes are reflected in the pleadings, motions and affidavits, neither party objects to the above procedure. We find no genuine issue of material fact in the dispositive issue. *But see Young Plumbing & Heating Co. v. Iowa Natural Resources Council,* 276 N.W.2d 377, 381 (Iowa 1979).

I. *Appeal from agency action.* As a preliminary matter, the District did not

select the proper vehicle for challenging this arbitration decision. We are satisfied arbitration of a collective bargaining impasse is agency action, reviewable only pursuant to section 17A.19, The Code.

■ PERB is clearly an administrative agency subject to chapter 17A. *See* § 17A.2(1); *Frazee v. Iowa Board of Parole,* 248 N.W.2d 80, 82 (Iowa 1976). The several PERA cases which have reached this court have followed the judicial review procedures of section 17A.19. *See, e. g., City of Davenport v. PERB,* 264 N.W.2d 307 (Iowa 1978).

The legislature has delegated to PERB some of its authority to control conditions of public employment. Determination of employment conditions in the public sector by collective bargaining is a privilege conferred by statute, and is conditioned upon the use of binding arbitration rather than strikes to resolve negotiation deadlocks. Supervision of bargaining and of impasse resolution is delegated to PERB. The legislature has determined, however, that absent agreement of the parties, an impasse shall be resolved by a panel of arbitrators.

"Agency action" means, among other things, all or part of an agency decision or its equivalent. § 17A.2(9). If the arbitration panel was composed of PERB members, officials, or employees, its decision would be agency action. There is no logical reason why the same decision by a panel of arbitrators should be viewed differently.

This conclusion is consistent with the premise underlying constitutional challenges to public employee collective bargaining statutes in other jurisdictions. *See* Annot., 68 A.L.R.3d 885, at §§ 3, 4 (1976). An examination of the cases there discussed indicates Iowa's PERA delegates legislative authority, through PERB, to arbitrators. We need not consider the constitutionality of this delegation since the parties did not raise it.

In *Salsbury Laboratories v. DEQ,* 276 N.W.2d 830 (Iowa 1979), we held section 17A.19 provides the exclusive means of obtaining judicial review of agency action.

As in that case, we will view the District's timely filed petition as seeking judicial review of final agency action. *See* § 20.-22(13).

There is also a question of mootness in this case. The employment period expired June 30, 1977. We are being asked to declare a collective bargaining arbitration decision invalid due to defects in the arbitration process—which under our recent holding in *City of Des Moines v. PERB,* 275 N.W.2d 753 (Iowa 1979), did not occur until after the mandatory end point of negotiations under chapter 20—and remand for reinstitution of the arbitration process to settle this wage dispute. Of course, the parties can always terminate the matter by settlement.

■ The late start for arbitration does not moot this case. *City of Des Moines* was expressly based on a *union's* request for arbitration, in which request the employer did not join. Here the *District* requested arbitration when it was impossible to complete it timely. Both parties took affirmative statutory steps to implement the process. The Association never objected, despite the fact that at the time PERB was holding March 15 to be a bargaining and arbitration deadline. *See City of Des Moines,* 275 N.W.2d at 760. We took pains in *City of Des Moines* not to hold the March 15 deadline jurisdictional. Without an objection from one of the parties *City of Des Moines* simply does not apply; we need not search for a helpful exception. In this case the only objection raised was District's repeated warning that the arbitration must be completed in fifteen days.

Arbitrating a salary schedule for an employment period which has expired may be anomalous, but enforcement of the rights of public employers and employees provided by chapter 20 makes it necessary. Inevitable trial and appellate time sequences will always force courts to consider legal issues produced by negotiations for a contract period already in full swing if not terminated when a final decision is reached. If this case is moot, most appeals from decisions rendered by PERB or arbitration panels

will be. This would be an intolerable result.

There is no difference between this situation and our frequent adjudications involving back pay. *See, e. g., Kitchen v. Stockman National Life Insurance Co.,* 192 N.W.2d 796 (Iowa 1971). Of course, a disputed provision in an employment contract cannot always be reduced to a question of dollars and cents. But where it can be, an after-the-fact settlement or arbitration can restore to the prevailing party, via the next budget, whatever benefits were improperly withheld or mandated. In this case the dispute is purely monetary.

II. *Definition of "impasse item."* On the merits a reversal is mandated by *West Des Moines Education Association v. PERB,* 266 N.W.2d 118 (Iowa 1978), filed after these parties' briefs were filed.

Section 20.22(11) requires the arbitration panel to select either of the final offers or the fact-finder's recommendations "on each impasse item." In *West Des Moines* we held "impasse item" means any section 20.9 subject of bargaining on which the parties cannot agree.

In this case, settlement of the supplemental pay item during arbitration left only the impasse item of wages (termed salary schedule by the parties) for the panel's consideration. Within that item there were several points of disagreement. The parties were seventy-five dollars apart on base rate, and they disagreed on the number of time steps in each educational lane. Their maximum salary proposals in each lane differed accordingly. The fact-finder combined the District's base rate with the Association's steps. The District also proposed a lane for non-degree employees and conditioned entry into the master's degree lane upon receiving that degree in the employee's assigned teaching category. Neither the Association's final offer nor the fact-finder's report contained a response to either proposal.

■ The panel selected the Association's final offer on every aspect of the salary schedule but also installed the non-degree

lane proposed by the District. That result is in conflict with *West Des Moines* and cannot stand. The panel should have selected either of the final offers on salary or the fact-finder's report, *in toto.*

■ Upon oral submission the Association urged us to overrule *West Des Moines* and hold "impasse item" means any word, phrase, clause, sentence, or paragraph on which the parties cannot agree. We decline. The legislature's goal of hard bargaining and reasonable offers is promoted by construing "item" as broadly as the statutory language otherwise permits. "Item" means any section 20.9 subject of bargaining.

We return the parties to the arbitration process, which shall be triggered without delay by an appropriate request and shall follow, to the extent feasible, the section 20.22 guidelines. The same fact-finder's report shall be used but the parties may submit new final offers and nominate different arbitrators.

Our reversal and remand on the "impasse item" definition moots remaining issues. But because some are of continuing interest in public employment and are likely to recur, we treat them here. *See Catholic Charities v. Zalesky,* 232 N.W.2d 539, 542–43 (Iowa 1973).

III. *Statutory fifteen-day limitation on arbitration process.* The District contends an arbitration decision rendered more than fifteen days after the panel's first meeting is invalid. Section 20.22(11) provides:

A majority of the panel of arbitrators shall select within fifteen days after its first meeting the most reasonable offer, in its judgment, of the final offers on each impasse item submitted by the parties, or the recommendations of the fact-finder on each impasse item.

The panel in this case did not comply with this fifteen-day requirement. The Association insists, however, a late decision is valid unless prejudice is shown.

The statutory construction rule invoked here is the mandatory-directory distinction discussed in *Taylor v. Department of Trans-*

*portation,* 260 N.W.2d 521, 522–24 (Iowa 1977). *See also State v. Lint,* 270 N.W.2d 598 (Iowa 1978); *State v. Lohr,* 266 N.W.2d 1, 5–6 (Iowa 1978). Because section 20.-22(11) uses "shall" the statute imposes a duty to produce a decision in fifteen days. § 4.1(36)(a); *Lohr,* 266 N.W.2d at 5. The issue is whether failure to perform that duty invalidates a belated decision. *Taylor* provides the test:

> If the prescribed duty is essential to the main objective of the statute, the statute ordinarily is mandatory and a violation will invalidate subsequent proceedings under it. If the duty is not essential to accomplishing the principal purpose of the statute but is designed to assure order and promptness in the proceeding, the statute ordinarily is directory and a violation will not invalidate subsequent proceedings unless prejudice is shown.

260 N.W.2d at 522–23.

In *City of Des Moines v. PERB,* 275 N.W.2d 753 (Iowa 1979), this court concluded a primary purpose of the PERA is providing public employees the benefits of collective bargaining in a manner consistent with effective and orderly government. Consequently the manifest legislative intent that bargaining, and arbitration when necessary, be completed by the employer's budget submission date made that date a mandatory deadline.

The legislature fashioned an impasse procedure timetable that, if observed with reasonable care, will result in a negotiated or arbitrated agreement well before the deadline. *See* § 20.19 *et seq.* Although the parties may create their own impasse procedures, section 20.19 requires such procedures to be implemented on the same date as are statutory procedures: 120 days before budget submission date.

The word "shall" is sprinkled liberally throughout the statutory impasse steps. The purpose of most of the duties thereby created obviously is "to assure order and promptness in the proceeding." *Taylor,* 260 N.W.2d at 523. For purposes of this analysis we may assume those time sequences within control of a single party, mediator,

or fact-finder may be construed as directory.

This construction is in accord with the general rule that statutory provisions fixing the time, form and mode of proceeding of public functionaries are directory because they are not of the essence of the thing to be done but are designed to secure system, uniformity and dispatch in public business. Such statutes direct the thing to be done at a particular time but do not prohibit it from being done later when the rights of interested persons are not injuriously affected by the delay. *Younker Brothers, Inc. v. Zirbel,* 234 Iowa 269, 274, 12 N.W.2d 219, 223 (1943); *Bechtel v. Board of Supervisors of Winnebago County,* 217 Iowa 251, 257, 251 N.W. 633 (1933); *Yengel v. Allen,* 179 Iowa 633, 161 N.W. 631 (1917); *Dishon v. Smith,* 10 Iowa 212, 218 (1859) ("And it is a general rule of law, that statutes directing the mode of proceeding of public officers, relating to time and manner, are directory.").

*Taylor,* 260 N.W.2d at 523. *Accord, City of Spokane v. Spokane Police Guild,* 87 Wash.2d 457, 553 P.2d 1316 (1976). *Contra, Garden City Educators' Association v. Vance,* 224 Kan. 732, 585 P.2d 1057 (1978).

We may assume employers and unions will obey the statutory mandate to participate in good faith in the impasse procedures. §§ 20.10(2)(g), (3)(d). We may also assume the obligation to follow statutory time sequences will not be ignored by the mediator or the fact-finder. Sufficient slack is left in the timetable to permit reasonable good-cause delays and still obtain an agreement before the mandatory deadline.

But the specific duty violated in this case—the fifteen-day limitation on arbitrators' deliberations—is different from the others. Under Iowa's hybrid of the typical final-offer arbitration scheme, the three arbitrators have the right to select from three options: (1) the employer's final offer, (2) the union's final offer, and (3) the fact-finder's recommendations. *See* § 20.22(11). There is no guarantee that either party will

adopt the fact-finder's position. Neither did in this case.

It is not unlikely that the employer's arbitrator would adopt the employer's final offer on all items, the employee organization's arbitrator would adopt the organization's final offer, and the "neutral" arbitrator would adopt the fact-finder's recommendation. As the number of impasse items increases, the chances of arbitration panel impasse increase. The potential for this deadlock is highlighted by a letter the neutral arbitrator sent to the other arbitrators in the case before us. He suggested each "write up [his] decision," and directed distribution of copies. He added:

> I am aware that there may be an issue or two or perhaps more on which the three of us do not agree and have potentially three separate opinions. In that event, it seems we will not have a binding arbitration Award on that matter.

As we recognized in *City of Des Moines,* completion of the bargaining process before the budget submission date is essential. The public employer's ability to grant wage and benefit concessions depends upon the availability of additional tax revenues. *See* §§ 20.17(6), .22(9)(c), .22(9)(d). Only if agreement is reached before budget submission can the employer accurately request funds sufficient to cover the new agreement. Nothing in chapter 20 or in chapter 24 (Local Budget Law), The Code, suggests an employer should have to submit a budget containing estimated provisions contingent on unfinished negotiations or arbitration.

The fifteen-day limitation on arbitration deliberation is essential to the primary purpose of PERA, enunciated in *City of Des Moines.* Arbitration is the last opportunity in the impasse procedure to force an end to bargaining. Once the impasse is submitted to the panel, the parties lose control over its resolution; unless they compromise, *see* § 20.22(11), they must await a decision. A deadlock within the panel, however, could prevent a decision from being reached before the budget submission date, thereby frustrating the entire bargaining process and the goal of PERA to ensure labor peace in the public sector.

■ Consequently, the statutory fifteen-day limitation is mandatory. An arbitration decision rendered more than fifteen days after the panel's first meeting is invalid and unenforceable. At the end of the fifteen-day period either party can trigger the selection of a new panel pursuant to section 20.22 by an appropriate request. It would not be necessary, as asserted by the Association, to go back to square one in the impasse procedures.

The conclusion we reach is supported by authority, *International Association of Firefighters, Local 463 v. City of Johnstown,* 468 Pa. 96, 360 A.2d 197 (1976); *Town of Tiverton v. Fraternal Order of Police, Lodge # 23,* —— R.I. ——, ——, 372 A.2d 1273, 1275–76 (1977), although other decisions would support a contrary result. Annot., 56 A.L.R.3d 815 (1974). The Iowa three-choice statute, as we have noted, creates a potential for irreversible deadlock which authorities cited by the Association were not required to confront.

The opinion most relied on by the Association, and by PERB as amicus curiae, is *City of Spokane v. Spokane Police Guild,* 87 Wash.2d at 457, 553 P.2d at 1316. It is distinguishable. We find nothing in the *Spokane* case nor in the Washington Code, *see* RCW 41.56.450, .460, which indicates that state has adopted final-offer arbitration, much less the three-selection anomaly presented by Iowa's PERA. The Washington court relied in part on a provision of the act which permits either party to seek an appropriate compelling order from the superior court, a provision not contained in our legislation. There also is some uncertainty in the decision whether a party may unilaterally violate a statutory time requirement. *See* 87 Wash.2d at 464 n. 2, 553 P.2d at 1320 ("We leave open the question whether a party is entitled to a delay in meeting a particular timetable requirement in RCW 41.56.450 in the absence of consent by the opposing party."). Finally, *Spokane* speaks of impasse procedure time requirements in general and gives no attention, like we must, to a particular deadline.

■ Our holding does not, of course, restrict the parties' right to agree on impasse procedures which eliminate any limitation on arbitrator deliberation. *See* § 20.19. This section also gives parties who have not already done so the right, in the midst of arbitration, to agree to extend or lift the fifteen-day bar. Under either of those situations the only mandatory deadline which cannot be modified by agreement is the certified budget submission date.

Nor does the construction we give section 20.22(11) cost more in delay than it is worth. Termination of a panel's authority will ordinarily occur only when the basis for our conclusion occurs: a deadlock within a three-member panel. It will not occur when a single arbitrator is chosen pursuant to section 20.22. We also anticipate the consent of the parties to extend the time will ordinarily be forthcoming when a panel or a single arbitrator simply needs extra time. In those few instances where a deadlock dissolves one or even two panels, the cost in extra delay is worth the opportunity to achieve an arbitrated agreement and secure labor peace. The automatic termination upon deadlock clearly would save the time required to complete a court proceeding to disband the deadlocked panel. The suggestion in *City of Des Moines* to start negotiations early is appropriate here as well.

IV. *Other issues.* Remaining issues the District raises may be treated summarily.

Section 20.22(13) provides that the arbitrator's decision "shall be by majority vote." It also provides that the panel shall inform the parties of its decision and give written explanation. The District contends no vote was taken and no explanation or notice of the decision was provided.

■ Neutral arbitrator Conway mailed copies of a thirty-page decision to the other arbitrators, PERB, and representatives of both parties. We conclude that regardless of its merits the decision was adequately explained. District suggests Conway's letter indicated the decision was nothing more than his proposal which invited more discussion. We conclude that when arbitrator Connolly concurred in Conway's "proposal" it became a "decision."

■ The District also complains it was never informed of the vote and that no formal "vote" was ever taken by the arbitrators. Conway instructed the arbitrators to send him their "decisions." Both responded. Arbitrator Connolly concurred in each portion of Conway's decision.

We do not endorse this procedure. A better voting procedure should be devised. The parties or their representatives should have been notified more formally. PERB could help by promulgating a more detailed rule to guide arbitration panels through these procedural matters. *See* § 20.6(5); 660 I.A.C. § 7.5(8).

We have considered other arguments urged by the parties. They require no treatment in this decision.

The district court judgment is reversed. The case is remanded for further proceedings in conformance with this opinion.

REVERSED AND REMANDED.

All Justices concur except McCORMICK, J., who dissents.

McCORMICK, Justice (dissenting).

This case illustrates the problems caused when courts disagree with an agency's construction or interpretation of the statute it administers. Here the district court disagreed with the PERB's interpretation of "impasse item" and, in view of our subsequent decision in *West Des Moines Education Association v. PERB*, 266 N.W.2d 118 (Iowa 1978), erred in doing so. Now this court rejects the PERB's determination of the effect of a late arbitration decision. The situation is further complicated by this court's decision just last month in *City of Des Moines v. PERB*, 275 N.W.2d 753 (Iowa 1979), again spurning a PERB construction of the statute, holding March 15 is a mandatory deadline for the bargaining process, subject to certain possible undisclosed exceptions.

Lurking in the shadows is the question of mootness. The present case involves bar-

gaining for a contract for the 1976–1977 school year. The time has passed. Presumably the schools were open, classes were taught, and teachers were compensated. Upon remand, arbitration is to be resumed to fix terms of a contract which, so far as the record discloses, cannot be performed.

The problems in this case point up the merit in the principle that courts should give weight to agency construction and interpretation of the statute it administers. See West Des Moines, 266 N.W.2d at 124–25. This is particularly true when agency procedures are implicated. We lack the specialized knowledge and breadth of data possessed by the agency, and frequently, as in this case, the agency is as good a judge of legislative policy as the courts are. We should not lightly substitute our notions of legislative intent for those of the agency. The predictability and regularity of the administrative process is at stake. The more we interfere with an agency's decisions, the more we disrupt its processes and our own. Agency decisions lack finality, and litigation is fostered. Increased costs, delay and uncertainty result. Moreover, courts simply do not have the capacity to make agency decisions in addition to judicial decisions.

I. *Mootness.* The present controversy concerns events which occurred subsequent to the mandatory March 15 cut-off date for collective bargaining delineated in *City of Des Moines.* This fact would moot the controversy except for the court's holding today that the deadline is non-jurisdictional and has been waived. It is difficult to see how this holding serves the cause of effective and orderly delivery of government services espoused in *City of Des Moines.*

However, the case appears to be moot for a different reason. This is not a case involving enforcement of rights, like a claim for back pay, under a past contract; it concerns establishment of a contract for personal services which, by reason of passage of time, cannot be performed under the contract so established. The court's holding ostensibly affect events which are beyond recall. If so, the case is moot. *Local No. 8–6, Oil, Chemical & Atomic Workers International Union v. Missouri,* 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960); *CWA v. Southern Bell Telephone and Telegraph Company,* 419 F.2d 1310 (5 Cir. 1970); *Interstate Bakeries Corp. v. Bakery, Cracker, Pie and Yeast Wagon Drivers Union, Local 734,* 58 Ill.App.2d 485, 208 N.E.2d 397 (1965).

If the controversy is moot, the question should not be decided unless the criteria delineated in *Board of Directors of Independent School District of Waterloo v. Green,* 259 Iowa 1260, 147 N.W.2d 854 (1967), are met. I do not believe the public interest exception applies here.

The problem in division I is addressed in *Salsbury Laboratories v. Iowa Department of Environmental Quality,* 276 N.W.2d 830 (Iowa 1979), and the question in division II was answered in the *West Des Moines* case.

The holding in division III rests upon speculation about potential for arbitration deadlock in a case where the arbitration process was complicated by use of a wide-open definition of impasse item instead of the narrow definition subsequently adopted by this court in *West Des Moines.*

The *West Des Moines* decision was predicated on reasoning that the legislature intended to narrow the differences of the parties to require hard bargaining before the arbitration stage. We believed offers on subject category impasse items would be more likely to be reasonable because of the desirability of having the factfinder as an ally in entering arbitration. If this belief is justified, the prospect of a deadlock during arbitration is minimized.

Prudence dictates the desirability of waiting until the issue is presented in a case where the *West Des Moines* holding has been applied. We would then have a better perspective on the problem.

It is also significant that the issue is here decided based upon a perception about potential for deadlock in a case where deadlock did not occur even though the wide-open concept of impasse item was used. The record contains no data showing deadlock has ever occurred in arbitration, nor

does it contain any information upon which the costs in time and money of the procedures adopted by the court today can be calculated.

The issue does not have to be decided in this case, and I do not believe it should be. I would ask the parties to show cause why the appeal should not be dismissed for mootness.

II. *Effect of noncompliance with the arbitration time limit.* On the merits, I do not believe the holding in division III has any basis under established principles of statutory interpretation.

In *City of Des Moines* the court said, "Whether the individual times set in §§ 20.20–.22 are directory or mandatory has no bearing on the result in this case." 275 N.W.2d at 761. It follows that the result in that case does not control our determination whether an arbitration decision is invalid unless made within fifteen days of the first meeting of the arbitrators.

Similarly, neither *International Association of Firefighters v. City of Johnstown,* 468 Pa. 96, 360 A.2d 197 (1976), or *Town of Tiverton v. Fraternal Order of Police,* 372 A.2d 1273 (R.I.1977), is authority for the court's holding. Those cases involved the same problem as *City of Des Moines,* and, unlike Iowa, each jurisdiction had a statute requiring arbitration requests to be made a fixed number of days before a budgetary deadline. An arbitration timetable is distinguished from such a provision in *Town of Tiverton. See* 372 A.2d 1275. It is also noteworthy that in *City of Johnstown,* despite holding the time limitation for requesting arbitration to be mandatory, the court held that dilatory conduct by the public employer excused the employee group from meeting the schedule.

Certainly it is not necessary to the purpose of the PER Act to hold that the time provisions of the schedule for impasse steps are mandatory. The budget-filing deadlines do not require it. If every statutory impasse step were pursued on schedule, the process would be completed within sixty-seven days. See §§ 20.21, .22(1), .22(2), .22(5) and .22(11). When the parties

agree on impasse procedures, section 20.17 gives them until one hundred twenty days before the certified budget submission date of the public employer to commence them. The legislature built substantial leeway into the schedule for impasse procedures.

This is entirely reasonable. People do not function like machines. Employee groups and employers vary greatly in size and location in this state. Their resources, needs and problems differ. They do not have identical capacities to respond to the statutory schedule. Their ability to do so may be affected by many fortuitous events, not the least of which are weather, illness and other manifestations of human frailty. In view of these realities, I do not believe the legislature imposed deadlines upon them which are intended to have punitive effects. I believe the legislature provided the time frame for impasse procedures from a desire to secure system, uniformity and dispatch in the public business, not to invalidate late agreements even when no prejudice is shown.

The court's decision assumes the ten-day deadline for mediation and the fifteen-day deadline for factfinding in section 20.21 are directory rather than mandatory. We have no basis in the statute for holding that the legislature meant something different when it also used the word "shall" in the succeeding subsection in imposing the fifteen-day deadline on arbitration. *See* § 20.22(11). Under our holding in *Taylor v. Department of Transportation,* 260 N.W.2d 521, 522–524 (Iowa 1977), these provisions are plainly directory rather than mandatory. They impose a duty to keep the schedule, but a failure to do so will not invalidate subsequent proceedings unless prejudice is shown.

In addition to the standard delineated in *Taylor,* this conclusion is supported by other principles of statutory construction.

The fifteen-day arbitration deadline in section 20.22(11) is couched in affirmative language. Nothing in the provision expressly invalidates a late decision or inferentially makes timeliness a condition prece-

dent. These factors are characteristics of directory statutes. Upon this reasoning a similar arbitration deadline was held to be directory in *International Brotherhood of Teamsters Local 145 v. Shapiro*, 138 Conn. 57, 82 A.2d 345 (1951).

It is also significant that the parties have no control of the action of the arbitrators. This has been recognized as an additional factor which supports holding that a statute fixing a time limit for an arbitration decision is directory. Ordinarily a litigant should not be denied the fruits of litigation because the judge fails to decide a case by a particular day. The same principle applies to arbitration. *Pingree v. State Court of Mediation and Arbitration*, 130 Mich. 229, 89 N.W. 943 (1902).

Such a holding is also consistent with our duty to construe the PER Act liberally with a view toward promoting its objects and assisting the parties in obtaining justice. See § 4.2, The Code. Impasse procedures are complex enough without introducing the complication of mandatory deadlines into them.

Additional cases holding arbitration decision deadlines to be directory include *West Rock Lodge No. 2120, International Association of Machinists v. Geometric Tool Co.*, 406 F.2d 284 (2 Cir. 1968), and *City of Spokane v. Spokane Police Guild*, 87 Wash.2d 457, 553 P.2d 1316 (1976).

It is also significant that in amending section 20.17 to fix a March 15 deadline for state-level collective bargaining agreements, the legislature did not treat the timetable for statutory impasse procedures as mandatory. Instead, the amendment directed the PERB to provide, by rule, "a date on which any impasse item must be submitted to binding arbitration and for such other procedures as deemed necessary to provide for the completion of negotiations of proposed state collective bargaining agreements not later than March fifteenth." The amendment did not stop there. The legislature did not rely upon the fifteen-day period for reaching an arbitration decision in section 20.22(11). The amendment added this requirement: "The

date selected for the mandatory submission of impasse items to binding arbitration shall be sufficiently in advance of March fifteenth to insure that the arbitrators' decision can be reasonably made before March fifteenth." *See* 1977 Extra Session, 67 G.A., ch. 1, § 26. This part of the amendment would not be necessary if the legislature intended the fifteen-day period in section 20.22(11) to be mandatory.

III. *Policy considerations.* I do not believe speculation about potential for deadlock in the arbitration process can justify holding that the fifteen-day limitation in section 20.22(11) is mandatory. No empirical data supports that speculation. It assumes arbitrators selected by the parties will lockstep with the parties' offers and the "neutral" arbitrator will lockstep with the factfinder. This assumption is unwarranted. It is wholly contrary to the principle which underlies any system of arbitration. The task of arbitrators is to reach a decision, just as other adjudicators, including courts, do. Labor arbitrators are not automatons who inflexibly adhere to a one-dimensional view. Ordinarily, they are well-paid, highly-trained and skilled experts in the art of compromise. I believe arbitrators can be trusted to reach decisions even though they are not judges.

Furthermore, giving an arbitration panel a maximum fifteen-day life will remove one important inducement for the arbitrators to make a decision. They are more likely to reach agreement if they know the buck stops with them than if they know they will be replaced by another panel if they do not agree within fifteen days.

Of equal importance, it is unlikely that the goal of avoiding delay caused by deadlock will be achieved by aborting arbitration and starting it anew if an arbitration decision is not made in the relatively short span of fifteen days. The statute allows seventeen days for the mechanics of selecting and convening the panel of arbitrators. Additional time is taken in submitting the dispute. All of this time, in addition to the fifteen days exhausted by the deliberations of the panel, will be wasted when the par-

ties are required to start anew. If successive panels fail to issue a decision within fifteen days, the wasted time, effort and expense will become proportionately greater.

If arbitrators cannot be relied upon to reach a decision within a reasonable time, how do we know that a second or third panel will be more likely to do so than the first one?

IV. *Responding to the public interest.* It is incongruous to hold that the arbitration deadline in § 20.22(11) is mandatory because the public interest demands it and at the same time hold that the parties, including the employee bargaining unit, may nevertheless waive it by agreement or by failing to object to delay. If the deadline is essential to the purpose of the Act, it should not be subject to waiver by the parties. They should not have the right to subvert the policy of the statute. The District's position is consistent. It insists that all the deadlines in the statute are both mandatory and jurisdictional.

Despite the court's effort to ameliorate the harshness of its holding by saying that the deadline in section 20.22(11) is not jurisdictional, I am afraid the court has put a premium on delay by its decision in *City of Des Moines v. PERB*, which will lead to cases in which delay in collective bargaining becomes a tactic to defeat an agreement. In those situations we can expect that the courts will be asked to find deadlines to be unenforceable because of waiver or upon some other theory. See *International Association of Firefighters v. City of Johnstown; Wingert v. Urban*, 250 N.W.2d 731 (Iowa 1977).

We do not foster public employer-employee harmony by adopting procedures which have the potential of putting every case in which a deadline is not met into litigation so the courts may decide, on an *ad hoc* basis, which delays were permissible and which were not. Consequently the procedures cannot fairly be said to respond to the public's interest in labor peace.

V. *Lack of basis in the statute.* Finally, the procedures adopted by this court for substituting a new panel of arbitrators are not provided in the statute being interpreted, and they do not merely fill statutory interstices. They rest on considerations of policy which are within the legislative prerogative.

The only provision in the statute for convening a arbitration panel is in section 20.22. The only panel for which the parties submit names is the one called "*the* panel of arbitrators" sixteen times in this provision. Nowhere is there a reference to "*a* panel of arbitrators". The time frame for selection of the panel starts four days after a party's initial request for binding arbitration. This request is the only basis for triggering the naming of a panel. A provision is made for filing a vacancy, but the only schedule provided is tailored to choosing a single panel. No provision is made for selection or deliberations of a second panel.

In these circumstances I cannot believe the legislature intended that the panel of arbitrators would be discharged and a new panel selected if an arbitration decision is not made within fifteen days. Even if the result were desirable, it is not our function to modify the statute.

Assuming the merits of this case should be decided, I would hold that the fifteen-day limitation in section 20.22(11) is directory rather than mandatory. Under that interpretation, a late arbitration decision would be valid unless the objecting party showed prejudice from the delay.

Although I believe the case is moot, if it is not, I would reverse and remand for the reasons in division II of the court's opinion, returning the case to the same arbitration panel, subject to the provisions of section 20.22(6) regarding filling vacancies. I agree that the parties, in that event, should be authorized to amend their final offers.